IN THE

# SUPREME COURT

OF THE

## STATE OF NEW-YORK,

IN OCTOBER TERM, 1845.

---

## PALMER *vs.* WILLIAM G. STEPHENS.

A party signing a written instrument with his *initials,* intending thereby to bind himself, is as effectually bound as he would be by writing his name in full.

It is competent, however, where the suit is between the original parties, for one whose initials, or full name, appear to a note or obligation, to shew that he placed them there to attest the execution of the instrument, or for any other lawful purpose, and not as maker of the instrument. *Per* BEARDSLEY, J.

Where a promissory note purporting, from the words "*we* promise" &c., to be the note of more than one person, was signed in the first place with the name of a single individual, under which name were w itten the initial letters of the defendant's name, which were proved to be in his hand-writing; *held,* that the defendant was presumptively a joint maker; and also· that such presumption was not overcome or impaired by proof that the first signature was likewise in the defendant's hand-writing.

Where one executes an instrument in the name of another, assuming to be his agent, but having in fact no authority for that purpose, he is himself bound as a principal.

Whether this rule would apply in a case where the name of the assumed agent did not appear on the paper, *quere. Per* BEARDSLEY, J.

To exempt the party assuming to be agent from the operation of this rule, it must

471

appear that he was such when he signed the instrument. A subsequent ratification by the party named as principal would not affect the question.

The partners of a firm, by adopting and using in their business the name of a single individual for that of their firm, will subsequently be bound by the use of such name, to the same extent as though they had used the ordinary name of their firm.

Where the partners of a firm have a copartnership name which they ordinarily use, they will not be bound by the use of a new name, unless it be shewn that all the partners have assented to the use of such new name, or that the partner who was entrusted with the control and management of the business of the firm had so assented.

The defendant, a clerk of a mercantile firm, consisting of Gideon Stephens and three of his sons, who ordinarily transacted their business under the name of G. Stephens & Sons, having authority to make notes in behalf of the firm, but not in behalf of Gideon Stephens individually, made a note to the plaintiff upon a copartnership transaction and signed the same *G. Stephens,* adding his own initials; *held,* that the defendant was himself liable on the note, unless it were shewn that the firm was bound in consequence of having adopted the name of G. Stephens as a proper name to designate such firm in the transaction of its business.

Assumpsit, tried at the Albany circuit in February, 1844, before Cushman, late C. Judge. The plaintiff gave in evidence a promissory note payable to himself, the body and signature of which were proved to be in the hand-writing of the defendant, which was in the following words:

"On demand, for value received, we promise to Nathaniel Palmer one thousand dollars, on interest. Coeymans, Nov. 20, 1841.                                        G. Stephens.
                                                W. G. S."

The plaintiff then rested; and the defendant's counsel stated the defence to be, that the firm of Gideon Stephens & Sons, for whom they alleged the note was given by the defendant as their clerk, were alone liable to the plaintiff.

It appeared that at the date of the note there was a mercantile firm at Coeymans, composed of Gideon Stephens and three of his sons, Nathan, James and Joseph, the correct name of which was G. Stephens & Sons; but it was known and sometimes designated as G. Stephens & Co. The defendant is a son of Gideon Stephens, and was a clerk of the firm at the date

Palmer *v.* Stephens.

of the note and for some time before and afterwards, but was never a member of it. The firm failed in August, 1842. It was proved that the defendant as clerk was fully authorized to make notes for and in behalf of the firm. Gideon Stephens was examined as a witness for the defendant, [an objection to his competency on the ground of interest, made by the plaintiff's counsel, having been overruled,] and testified that the clerks of the firm, in signing papers in its behalf, frequently added their own initials under the name of the firm as signed by them; and the same fact appeared by other witnesses. The defendant gave evidence, after an objection on the ground of immateriality had been overruled, to shew that the defendant and other clerks of the firm sometimes signed the individual name of Gideon Stephens as and for the firm name, placing the initials of the person who signed it under the name of the firm. Gideon Stephens said that the clerks were in the habit of doing so. Other witnesses said it had sometimes been done by other clerks in giving receipts; and some receipts so signed were offered in evidence and received, against the objection of the plaintiff's counsel. They were for stone delivered to the firm, and were dated in 1839 and 1842. Gideon Stephens in his testimony stated that the defendant was authorized to sign the individual name of the witness for the benefit of the firm and *as the firm name*, but not to sign it to bind the witness alone. · He subsequently said that no special authority to sign notes was given to the defendant; that he was only authorized to do what was necessary and proper in the business of the firm; that the defendant sometimes signed the name of the witness alone for the firm name, adding his initials, but that he was never expressly authorized by the witness to sign in that way. The witness said he had never seen any note, except the one in suit, which had been signed by the defendant with the witness' individual name, but that he knew the defendant had thus signed receipts for stone, and had *heard* that he had signed some other notes in the same manner. Houghtaling, a witness for the defendant, testified that he had a few days before seen three notes, signed by the defendant as the one in question is signed. They were in the defendant's pos-

session. These notes were subsequently given in evidence by the defendant, though objected to by the plaintiff's counsel. They were, a note to E. Tweedale for $100, dated Dec. 10, 1841; one to Eli Jones for $49, dated Nov. 25, 1841; and one to Jacob Stewart for $75, dated Dec. 18, 1841. Shear, another witness for the defendant, who had been a clerk for the firm, was inquired of by the defendant's counsel whether the payees of these notes were in the habit of dealing with the firm. An objection to the question made by the plaintiff's counsel was overruled, and the witness testified that Jones and Tweedale were in the habit of doing so, but that he did not know Stewart. The witness had never seen these three notes until a few days before the trial. The account books of the firm, though objected to by the plaintiff's counsel, were received in evidence; and on the day book the three notes above mentioned were entered under dates corresponding with the dates of the notes; and in the account of cash paid out, there was an entry of the payment of the note given to Jones, under the date of March 1, 1842. These entries were in the hand-writing of the defendant, who as clerk of the firm generally kept its books, and the entries occurred in regular order, without any appearance of having been altered. The sum of $1000 is entered in the books as having been received by the firm of the plaintiff on the 20th November, 1841. This entry was given in evidence after an objection interposed by the plaintiff had been overruled. Nathan Stephens, one of the firm, was examined in behalf of the defendant, and testified that he paid the above mentioned note to Stewart, which, with the two other notes above mentioned and the one in suit, were the only notes he had ever seen signed in the manner those are signed; that the defendant was never authorized or directed to sign in that manner; that he had never seen any notes so signed till the time he paid the note to Stewart, and that the notes to Tweedale and Jones were never seen by him until lately, when the defendant shewed them to him. A witness had given testimony tending to shew that the plaintiff had left $1000 with the defendant, at the date of the note, for the firm, upon an arrangement between the plaintiff and the defendant

that if Nathan Stephens, one of the firm, who was then absent, concluded on his return to keep the money, the firm were to do so, and if not, it was to be returned to the plaintiff, the defendant not knowing whether the firm would desire to borrow it; and the defendant offered to prove by Nathan, that on his return the defendant mentioned the money and the arrangement to him, and that he concluded to keep the money. The plaintiff's counsel objected to the testimony so offered, but the objection was overruled, and the evidence so offered was received. A receipt for stone, signed G. Stephens, with the name J. Stephens written under it in the hand-writing of James Stephens, but written by him before he became a partner, was given in evidence by the defendant, an objection in behalf of the plaintiff having been overruled. In Nathan Stephens' testimony, he said that the plaintiff shewed him a note for $1000, dated May 5th, 1841, and signed "G. Stephens or," which was in the defendant's hand-writing. There was an endorsement on the back of the note in suit at one end of the paper, "G. Stephens & Sons," which Nathan Stephens testified was written by him at the plaintiff's request; it was done before the failure of the firm, and was intended for a *filing* of the note.

The court charged the jury that if they were satisfied that the note was given for money loaned to the firm and not to the defendant, and if the defendant received the money and gave the note *as the agent* of the firm *and by their authority and sanction*, the defendant was entitled to a verdict, otherwise the verdict should be for the plaintiff. The plaintiff's counsel requested the judge to charge, that unless the note was executed for the firm, and in its name, and appeared on its face to have been so executed, the defendant was liable; but the judge refused so to charge. The plaintiff's counsel excepted at the proper time to the various points ruled against him in the course of giving the evidence, and to the charge given and the refusal to charge as requested. The jury found for the defendant. The plaintiff moved for a new trial on a case.

*C. M. Jenkins,* for the plaintiff. The judge erred in admitting parol evidence to vary the terms and legal effect of the note. The note in its terms is not the note of G. Stephens & Sons. The name of that firm does not appear upon it, and there is nothing to shew that they are bound. (*Chitty on Bills, ed. of* 1839, *pp.* 67, 161, 163, *and cases cited at p.* 31; *Story on Partn.* § 102; *Story on Bills,* 878; 3 *Kent's Com.* 4*th ed.* 41, *and cases in the notes;* *Siffkin* v. *Walker,* 2 *Camp.* 308; *Pentz* v. *Stanton,* 10 *Wend.* 271; *Cowen & Hill's Notes,* 1464, *note* 983; *Stackpole* v. *Arnold,* 11 *Mass. R.* 26; *Prosser* v. *Luqueer,* 4 *Hill,* 420; *Commercial Bank of Lake Erie* v. *Norton,* 1 *id.* 501; *Payne* v. *Ladue, id.* 116.)

The judge erred in his charge and in refusing to charge in the manner requested by the plaintiff's counsel. The charge as given excluded the question whether the note was so executed as to bind the firm, which was the material point to be considered, and substituted the inquiry whether the firm received the consideration upon which it was given, which was immaterial. The plaintiff was entitled to the note of the firm, and the defendant, by executing one which if authorized would only bind a party for whom he had no authority to make a note, rendered himself liable. It is no answer that the assumed principal is liable in another form of action, as upon an implied assumpsit. The defendant assumed to give the plaintiff the advantage of commercial paper, and having given the paper of a party in whose behalf he had no authority to contract is bound to respond to the holder. (*Rossiter* v. *Rossiter,* 8 *Wendell,* 494; *White* v. *Skinner,* 13 *John. R.* 307; *Mauri* v. *Heffernan, id.* 58; *Pentz* v. *Stanton, supra;* *Leadbitter* v. *Farrow,* 5 *Maule & Sel.* 348; *Chit. on Bills,* 37.)

Even if the signature, *G. Stephens,* binds the firm, still the note is the joint note of the firm and of the defendant; and as the defendant did not plead in abatement, the plaintiff was entitled to recover. There is nothing connected with the signature of the defendant, by his initials, to shew that he acted as agent; and the circumstance of his having actually received the money before the firm had agreed to become the borrowers of it, ren-

ders it probable that he intended to bind himself personally. The signature by initials is sufficient. (*Merchants' Bank* v. *Spicer,* 6 *Wend.* 443; 8 *Vesey,* 185; *Brown* v: *The Butchers and Drovers' Bank,* 6 *Hill,* 443; 5 *John. R.* 145; 1 *Moody & Malk.* 516; 5 *Maule & Sel.* 348.) Slight evidence was enough, in connection with the note, to shew that the plaintiff required the defendant's liability. (*Longbottom* v. *Rodgers,* 2 *Man. & Gr.* 427.)

If the verdict is taken as affirming that the defendant was authorized to execute the note in the manner he did, it is against evidence.

*R. W. Peckham,* for the defendant. There is no just pretence for holding that the initials of the defendant's name bind him as a principal maker of the note. In *Brown* v. *The Butchers' and Drovers' Bank,* relied on by the plaintiff's counsel, where a party was held as endorser who had placed certain figures on the back of a bill, the judge at the circuit charged the jury that if the figures were made by the defendant "as a substitute for his proper name, *intending thereby to bind himself as endorser,*" he was liable; and this court, in sustaining the charge, took care to place the defendant's liability on the ground, that by the marks *he intended to bind himself.* A printed signature will bind a party, if so intended by the person whose signature it is; but the printed name of an engraver at the foot of an engraved bill would scarcely be held to bind him. These initials were placed on the note as a mere memorandum to shew who actually made the signature, and so every one must understand it. The fact that the first signature to the note was written by the defendant with his own hand, though it was the name of another person, explains the meaning of the initials placed under it. That fact was known to the plaintiff, and the common course of practice in such cases shews what the defendant intended. It was at all events for the jury to decide, and they have so determined. There is no pretence that the defendant's name as surety to this note was ever required. The plaintiff never treated the note otherwise than as the note

of the firm. The label or filing on the back, which was done at the plaintiff's request, indicates that he did not consider the note as the defendant's. To charge the defendant as a maker, the court must hold that the placing of initial letters on a note constitutes a principal signature irrespective of the intention of the party.

The charge was right. The judge told the jury that if they found that the firm borrowed the money, and the defendant *as their agent and by their authority*, gave the note in question, the defendant was not liable. This embraces the idea that the note was the note of the firm and binding on them.

The note was ratified by the firm. Nathan Stephens, one of the firm, at the plaintiff's request wrote their name upon it to shew that it was their note. This would preclude them from denying it. It was also ratified by the firm electing to keep the money after being informed of the manner in which it had been received. All the evidence specially objected to was proved by other testimony; and where this is so the court will not set aside a verdict upon a *case*. (5 *Hill*, 272; 12 *Wend.* 41.) So in respect to the account books. All the matters proved by them were established by other testimony. The objection to evidence respecting other notes was not well taken. The objection was not placed upon the ground that these notes were made *after* the one in suit, or that they had not been sanctioned by the plaintiff; but it assumed that such evidence was under all circumstances incompetent. The evidence of Gideon Stephens as to what he had heard respecting other notes signed like his was competent. If a partner is informed that a certain paper is made in the name of the firm by a copartner or clerk, and does not object, but suffers the paper to be paid in the course of business, it is evidence of the ratification of all such paper.

*By the Court,* BEARDSLEY, J. A person may execute an instrument and bind himslf as effectually by his initials as by writing his name in full. (*The Merchants' Bank* v. *Spicer*, 6 *Wend.* 443.) Figures or a mark may be used in lieu of the

proper name; and where either is substituted by a party, intending thereby to bind himself, the signature is effective to all intents and purposes. (*Brown* v. *The Butchers' and Drovers' Bank*, 6 *Hill*, 443; *Williamson* v. *Johnson*, 1 *Barn. & Cress.* 146; *Bank* v. *Flanders*, 4 *N. Hamp. R.* 239, 247, 8.) If the defendant, therefore, by placing his initials under the name of G. Stephens, intended to bind himself as a maker of the note, there can be no doubt of his liability in that character; and this was a point to be considered and decided by the jury.

But the initials might have been written, and so might the full name, to attest the execution of the note by the one who was maker, or to indicate that the one who wrote the initials had, as agent of the person whose name appeared as maker, executed the note for him and in his name. These are supposable cases; but they present questions on which the jury should have passed. Ordinarily a witness places his name at the left hand side of the instrument he attests, as the one who executes it signs on the right. But, although these are the positions usually and presumptively occupied by the maker and the witness, it is not indispensable that their names should be so located. It is always competent, certainly between the original parties, to show that one whose name appears to a note or any other obligation, whatever may be the relative position which the name occupies, placed it there, not as a maker of the instrument, but to attest its execution, or for some other lawful purpose. This is involved in the question of the due execution of the instrument, and where the evidence is conflicting it must be disposed of by the jury.

On its face this purports to be the note of more than one person. The words are *we promise*, which must be taken to mean two persons at least. It is signed *G. Stephens*, which, presumptively, means but a single person, although it may be shown to indicate several, if they think proper to adopt it as their joint name in the transaction of business. Unexplained, however, it indicates but a single individual; and under this name we find the letters *W. G. S.*, which, on proof that they were written by the defendant and are his initials, must be ta-

ken to designate his proper name, as fully as if it had been written at full length. Thus, upon the face of this note, and upon such proof as I have mentioned, the defendant would, presumptively, be deemed one of the makers; nor would this presumption be overcome, or indeed · impaired, by the additional fact that the signature, *G. Stephens*, was also in the hand-writing of the defendant.

But although these presumptions arise on the paper itself and the facts I have adverted to, they may be overthrown by testimony leading to opposite conclusions. The jury might, if the evidence was found to warrant that result, find that the defendant did not place his initials to the note as maker, but for some other purpose. This question seems not to have been presented to the jury by the judge, as it certainly should have been if evidence to disprove the presumption that the defendant signed as maker of the note, had been given by him. If no such evidence had been given, the plaintiff was entitled to a verdict on proof that the signatures to the note were written by the defendant, the letters being his initials.

Assuming that evidence exists upon which the jury may find that the defendant placed his initials under the name of G. Stephens, to indicate that the latter had been written by the defendant and not by G. Stephens himself, another ground remains to be considered on which the plaintiff claims a right to recover against the defendant.

The name *G. Stephens* was written by the defendant, and he undoubtedly intended to bind some person or persons by that signature. If no one else was bound, as the plaintiff insists was the fact, the defendant was clearly liable; for if one, assuming to be agent of another person, executes a note in his name, having in truth no authority for that purpose, the assumed agent is himself bound by the signature. (*Dusenbury* v. *Ellis*, 3 *John. Cas.* 70; *Rossiter* v. *Rossiter*, 8 *Wend.* 494; *Grafton Bank* v. *Flanders*, 4 *N. Hamp. R.* 239; 2 *Cromp. & Mees.* 530, *note.*) In England, a doubt has been expressed whether the assumed agent would be holden as a party to the paper, unless his name appears on it, although an action on the case would lie against

Palmer *v.* Stephens.

him. (*Chit. on Bills,* 35; *Wilson* v. *Barthrop,* 2 *Mees. & Welsb.* 863; *Polhill* v. *Walter,* 3 *Barn. & Adol.* 114.) But this distinction need not be considered, for here the defendant's initials, which for this purpose are equivalent to his name, are on this paper.

To exempt the assumed agent from personal liability on the ground stated, it must appear that he was agent at the time when he signed the note or other obligation. A subsequent ratification of his act would not affect the question. (*Rossiter* v. *Rossiter, supra.*)

Upon this part of the case it was a simple question of fact, whether the defendant signed the name *G. Stephens* to the note under competent authority, so that some other person than the defendant was bound thereby.

It cannot be pretended upon the evidence in the case, that this was the note of Gideon Stephens alone, or was intended to be by the defendant. The testimony of Gideon Stephens is decisive to show that the defendant was not authorized to give a note for him singly, although fully empowered to sign for the firm of G. Stephens & Sons, and thereby bind Gideon with his copartners.

It seems hardly to have been pretended on the trial, and certainly was not on the argument, that this was the note of Gideon Stephens alone. The ground assumed was that it was the note of the firm and bound all its members. It was clearly competent to show that the persons composing the firm of G. Stephens & Sons, had adopted and used the name of *G. Stephens,* without any addition thereto; for in that event they might be bound by it as they would be by the use of the ordinary name of their firm. (*Rogers* v. *Coit,* 6 *Hill,* 322; *South Carolina Bank* v. *Case,* 8 *Barn. & Cress.* 427.) (*a*) The defendant appears to have had authority to make notes for the firm, and consequently to do so in any name they might use for that purpose. If therefore *G. Stephens* had been assented to and used by the members of the firm, as a proper name to designate themselves

(*a*) See also *The Bank of Rochester* v. *Monteath,* (*ante, p.* 402.)

in transacting their business, and was used for that purpose by the defendant in this instance, he was clearly not liable for having signed the name G. Stephens to the note without competent authority. But it was material to show the concurrence of all the members of the firm in the use of this new name to designate and bind themselves, although it might be sufficient for this purpose to show that it had been so used by the partner who was entrusted with the control and management of the business. (*Williamson* v. *Johnson,* 1 *Barn. & Cress.* 146.) In the present case very slight evidence, and nothing more, was given that two of the four copartners were aware that the clerks had occasionally used the name *G. Stephens* to indicate the firm of G. Stephens & Sons; but as to the other two, the case furnishes no evidence whatever on this point.

Upon the charge of the judge, as I read it, the jury were at liberty to find for the defendant, although the firm of G. Stephens & Sons were not bound by the signature G. Stephens. The judge was requested to charge that the jury must find the note to have been executed in the name of the firm, or in other words that it was the note of the firm, before a verdict could be rendered for the defendant. This charge the judge refused to give, and in this I think he erred. The note was, confessedly, not the note of G. Stephens alone; and unless the firm were bound by it, which could only be effected by the use of their name, (*Pentz* v. *Stanton,* 10 *Wend.* 271,) the defendant was clearly liable for having transcended his authority. The true import of the charge may have been misapprehended; but as I understand it, the jury were at liberty to find that this was not the note of any person. It comes to this conclusion at last; but surely such a principle cannot be upheld. If it was not the note of the party whose name had been placed to it by another person, it was the note of the person who assumed to act as agent.

Much of the testimony offered on the part of the defendant and admitted by the judge was inadmissible, as irrelevant to the questions made, or incompetent in its nature. But without a particular examination of such parts and portions of the evidence as should have been rejected on the grounds stated, the cause

must be sent back to another jury, as not having been submitted on such points as were indispensable to its correct determination.

New trial ordered.