GEORGE B. FERRIS, Appellant, *v.* CHAUNCEY KILMER, Respondent.

One who authorizes another to use his name, in the conducting and carrying on of a business, is liable for the debts incurred in such business, although he has no beneficial interest therein.

Where one sells goods to an agent of a known principal, for use in the business of the principal, the presumption is that he gave credit to the principal, and, to shift the responsibility to the agent, the proof should be satisfactory that the vendor sold upon the credit of the agent alone.

H. K., being insolvent, carried on business in the name of C. K., who had no interest in the profits, but allowed his name to be used as a cover. Plaintiff was aware of the arrangement and the reasons therefor; he sold to H. K. a quantity of butter for the business; the purchase was made in the name of C. K., bill made out in his name, and the butter delivered at the store. *Held*, that C. K. was liable therefor.

(Argued September 27, 1871; decided January term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of defendant, entered upon the report of a referee. (Reported below, 47 Barb., 411.)

This was an action to recover the sum of $610, for a quantity of butter sold by the plaintiff's assignor in August, 1857. Harvey Kilmer carried on the produce business in New York, under the name of C. Kilmer, which name represented

York, under the name of C. Kilmer, which name represented the defendant. Harvey Kilmer was unable to do business in his own name, and used the name of his brother as a cover, the brother having no interest in the profits to be made in the business. The purchase in question was made in the name of C. Kilmer, and the bills were made out in that name. The butter was purchased by the direction of Harvey K., and delivered at the store where he was doing business under the name of C. Kilmer. Previous sales had been made in the same manner, and the payments made by Harvey, at the store.

The referee reported in favor of the defendant.

*Charles H. Woodbury* for appellant. Defendant, by allowing his name to be used in the business, made himself liable for such goods as should be bought in the business. (See Throop's Verbal Agreements, vol. 1, p. 228, *et seq.;* *Chase* v. *Day,* 17 John., 114; *Flanders* v. *Crolius,* 1 Duer Rep., 206; *Briggs* v. *Evans,* 1 E. D. Smith, 192.)

*Francis Kernan* for respondent. To raise a question of fact there should be a specific request to the referee to find and exception to his refusal. (*Grant* v. *Morse,* 22 N. Y., 323.) The judgment is presumed to be right, unless it appear that a rule of law has been violated after assuming that the facts have been viewed in the most favorable light to sustain the judgment which the testimony will admit of. (*Morse* v. *Grant,* 22 N. Y., 323–5; *Chubbuck* v. *Vernon,* 42 N. Y., 432; *Sandford* v. *Eighth Ave. R. R.,* 23 N. Y., 343; *Carman* v. *Pultz,* 21 N. Y., 547.) In dealing with plaintiff's assignor, Harvey Kilmer bound only himself. (*Palmer* v. *Stevens,* 1 Den., 471; *Brown* v. *Butchers', etc., Bank,* 6 Hill, 443.)

HUNT, C. The General Term have sustained the judgment on the ground that on the sale the credit was exclusively given to Harvey. In delivering the opinion of the court, MULLEN, J., uses this language: "The referee has not

found that credit was given exclusively to Harvey, but such is to be taken to be the intention of the referee, and thus construing the report, I am in favor of affirming the judgment." I am not able to concur in this inference of the intended finding of the referee. The undisputed facts point to a contrary conclusion.

It is proved without question that Harvey Kilmer carried on this business in the name of Chauncey, for the reason that he was himself so much in debt that he could not do business in his own name. Goods were purchased in the name of C. Kilmer for the store, and the sales from the store were made in the name of C. Kilmer. The purchases thus made for the store in the name of C. Kilmer were there paid for. All this was by the express authority of Chauncey. Business in this form had been several times transacted by the plaintiff with this establishment, and on the 27th of August the butter in question was bought in the name of C. Kilmer, and delivered at the store, where business was thus carried on in his name. The report corresponds with this evidence.

Upon this precise state of facts, what would have been the result if a creditor of Harvey had levied on this butter after it had reached the store? If the butter was the property of Chauncey the levy would not have held it. If it was the property of Chauncey it was because he was the purchaser from the plaintiff. If he was the purchaser he is liable for the purchase-price.

That a creditor of Harvey could not seize this butter was decided by this court in September last, in the case of *Smith* v. *Van Olinda.*[*] There the plaintiff Evaline Smith brought an action against the defendant for levying upon a wagon by virtue of a judgment against her relative, James H. Smith. It appeared that James H. carried on the business in the name of Evaline, and that the wagon was built at her shop from materials purchased in her name and upon her credit. On the trial Van Olinda offered to show that Evaline had no interest in the business; that it was the business of James

* See *ante,* p. 169.

alone, carried on for his sole benefit, and that the name of Evaline operated as a cover merely. This evidence was rejected and the plaintiff recovered. Upon appeal to this court the judgment was affirmed, and the rejection of this evidence held not to be error. This decision established the proposition, that the person furnishing the credit, and in whose name the business is carried on, is the legal owner of the property, although the beneficial interest is in another. Upon this decision Chauncey Kilmer was the purchaser and owner of this property, and the action was well brought against him. James H. in that case and Harvey in this was the agent of the person whose name was used and who furnished the money or credit.

It need not be denied that an owner of goods has the power to sell them to a man he knows to be insolvent, and without security. Until a man reaches the condition of mind which justifies an application for a commission of lunacy, he cannot be restrained from making foolish and imprudent bargains. He may even give away his property at his pleasure. The plaintiff was at liberty to sell his butter without security to Harvey Kilmer, whom he knew to be insolvent, rather than to Chauncey Kilmer, whom he knew to be responsible. I am, however, quite unable to comprehend how the law will adjudge that he has so done, when the butter was purchased in the name of Chauncey, when the bills were made out in the name of Chauncey, when it was delivered at the store of which Chauncey was, by his agent, the occupier; and when the seller knew that the person giving the order for the butter, in the name of Chauncey, was the authorized agent of the latter, and when there is not a single circumstance found showing or tending to show that he actually intended to sell to Harvey. In my opinion, the law does not pronounce a judgment so absurd. The cases of *Palmer* v. *Stephens* (1 Denio, 471), and *Brown* v. *Butchers' & Drovers' Bank* (6 Hill, 443), cited to sustain the decision, are quite wide of the present question.

The fact that the plaintiff knew the real situation of the

parties strengthens rather than weakens his claim. He knew that Chauncey was the principal and that Harvey was the agent. From the activity of Harvey and the absence and indifference of Chauncey, a stranger might have been deceived into the belief that Harvey was the principal and the owner. Should such an one part with his property, his claim against the real owner would be less prominent than that of one who knew, when he parted with his goods, who was the real purchaser.

Upon the undisputed facts in the case, Chauncey Kilmer was the purchaser of the butter in question, and liable to the purchaser for its price.

The judgment should be reversed and a new trial ordered, costs to abide the event.

EARL, C. In this case, the findings of the referee and the facts show that Harvey Kilmer, being insolvent, was permitted to do business in the name of his brother, the defendant. It is true that Harvey was to have the benefit of the business, but it was all done under cover of the defendant's name, as principal, by him as agent. The defendant must be regarded, for all purposes, as the principal, and liable for all the debts contracted by Harvey as his agent.

This butter was bought by Harvey in the ordinary way, and the plaintiff made out the bill, as he had before done upon similar occasions, against the defendant. The butter was delivered at the store where the business was carried on in the name of the defendant.

I do not see how it can make any difference with the rights of the plaintiff that he knew how the business was carried on, and the purposes for which it was thus carried on in the name of the defendant. He knew that the defendant was the principal in the business, and that Harvey was his agent, and he knew that he could hold, and had the right to hold, the principal for payment. Under such circumstances I see no ground for presuming that he meant to trust the insolvent agent exclusively.

Where one sells goods to an agent of a known principal, the presumption is that he gives credit to the principal and not to the agent; and, to shift the responsibility from the principal to the agent, the proof should be satisfactory that the vendor sold upon the credit of the agent alone.

I am, therefore, of the opinion that the plaintiff was entitled to recover, and the judgment should be reversed and new trial granted, costs to abide event.

All concur.

Judgment reversed.