# COURT OF APPEALS.

Moses A. Hoppock and others, appellants, agt. Lucius
Moses, executor, &c., respondent.

An *agency* to transact business for an individual, is terminated by the formation of a
*copartnership.*

Where an *agent* has been in the habit of purchasing goods of a firm for and in the
name of an individual, and subsequently purchases a bill of goods for, and has
them shipped in the name of a *copartnership firm,* of which he asserts, at the time,
that the same individual for whom he formerly purchased is a member, the selling
firm are bound to take notice of the *termination* of the purchaser's agency.

The purchaser has no more authority by his acts or declarations in behalf of the new
firm, to bind the individual for whom he formerly purchased by virtue of his
former agency, than he had to take in a partner without the consent of such in-
dividual. As he had no authority from the latter to purchase goods in the name
of the firm, his doing so was an assumption of authority of which the selling firm
had legal notice by the manner of doing the business.

The declarations of an individual agent of one member of a firm cannot be used as
evidence to prove a partnership against either member of the firm.

APPEAL by the plaintiffs from a judgment of the general
term affirming a judgment of nonsuit entered at special
term.

John M. Martin, *for appellants.*

This action was commenced and tried in the life-time of
the defendant, Chester Moses, to recover the price of certain
goods sold to him through his agent, amounting to $10,-
464 67.

On the trial it appeared that the plaintiffs were merchants,
doing business in the city of New York.

That the defendant was a manufacturer of cloth, carrying
on that business, and residing at Marcellus, in this state.

That he had an insolvent son named Curtis H. Moses, who had failed in business, and could not do business in his own name.

That he constituted this son his general agent to carry on the business of a general country store on his credit at Rochester, Minnesota, and for that purpose authorised his son to buy goods for him in the city of New York, where his credit was known to be good.

That the plaintiffs never saw nor had any personal communication with the defendant on this business, until after the sale in question, the business having been transacted with his son exclusively, as agent aforesaid.

That the son as agent, and on the credit of his father, purchased goods of the plaintiffs for this Rochester business, which were charged and shipped to the father at Rochester, by the direction of the son, and were paid for by the son, as agent of the father, in a regular course of business.

That in the spring of 1865, the same agent, after he had purchased a bill of goods of the plaintiffs in the ordinary course of this business, requested the plaintiffs to mark the goods so purchased, " Moses & Whallon."

That on being asked who Whallon was, and whether he had any money to put in the business? he said, "No, he had not; that he had been a clerk in another store in Rochester, and was a good salseman, and a very popular man there; and to get him in their store, they had taken him as a partner, and gave him a share in the business; that the business was just the same as it had been previous; that the business belonged to Chester Moses, entirely, just the same as it had been," and that the Moses of Moses & Wallon was Chester Moses.

That the plaintiffs believed they were selling the goods on Chester Moses' responsibility, as stated by his agent, knowing that his son and Whallon were both irresponsible, and that Chester was responsible; and that they (the plaintiffs) would not have sold or shipped the goods to any other Moses

than Chester Moses, about whose responsibility they had inquired, and were satisfied.

That the plaintiffs had no notice that this agency had been terminated, or the business changed, until after the sale of the goods in question, in 1865 ; when the defendant, Chester Moses, having been threatened with a suit, made his first appearance to the plaintiffs, at their store in the city of New York and admitted that his son had been his agent in the business at Rochester, but alleged that he had ceased to be so before the goods in suit were purchased and, therefore, refused to pay for them.

Other and similar facts appear throughout the testimony, tending to show that the defendant clothed his son with such real or apparent authority as to enable his son by his acts and representations, to procure goods for this Rochester business, and defraud the plaintiffs out of their property, if the defendant is not liable to pay for them.

After the plaintiffs had rested, Mr. C. B. Sedgwick, one of the defendant's counsel, without assigning any special reason, moved to dismiss the complaint, which was granted, and the plaintiffs duly excepted to the decision.

The plaintiffs afterwards moved for a new trial at special term, and their motion was denied.

Whereupon the defendant entered judgment, from which, and the order denying a new trial, the plaintiffs appealed to the general term, where the judgment and order were affirmed, and judgment of affirmance duly entered.

From this latter judgment the plaintiffs appealed to this court.

I. On an appeal from a judgment of nonsuit, all disputed facts are to be decided in the plaintiffs' favor, and all presumptions and inferences from the evidence which he might ask from a jury, are to be conceded to him, and a simple exception is sufficient to enable him to review all questions of law arising from such facts (*Cook* agt. *N. Y. C. R.R. Co.*, 3

*Keyes*, 476 ; *Labar* agt. *Koplin*, 4 *Comst.*, 547 ; *Pratt* agt. *Foot*, 9 *N. Y.*, 463).

II. On a general view of the testimony, it is apparent that the defendant appointed his son his general agent, with full discretionary power to conduct the business of a country store on his credit, out of the state in which he resided and beyond his immediate supervision and control.

This necessarily included authority not only to buy and sell goods for the business, but extensive incidental authority, in respect to the manner of purchasing and transporting the goods—the procurement of a place for the business—the employment of assistants—the making of subsidiary contracts and representations—including representations concerning the circumstances and credit of his principal, and, generally, to use all such means and perform all such acts, as he might reasonably deem proper and conducive to its success (*Petgrave on principal and agent*, 88, and cases, as to general and incidental authority.)

In fine, he gave his son all the powers of a general agent to transact business for another in a foreign country (*Story on Agency*, §§ 85, 86, and cases ; *Hunter* agt. *Hudson River Iron and Machine Co.*, 20 *Barb.*, 493, *Op. Court*, 507).

III. By clothing his son with these general powers, he made himself liable for his son's representations, that he (the son) was still buying goods for his father's business at Rochester ; because such representations were essentially necessary to enable him to obtain the goods requisite to carry on the business—were in nowise inconsistent with Whallon's connection with the business as partner, and were fairly within the general scope and purpose of the son's general agency (*Hunter* agt. *Hudson River Iron and Machine Co.*, *supra ; Collen* agt. *Gardiner*, 21 *Beavan*, 540 ; *Story on Agency*, § 85, and cases ; *N. Y. Life and Trust Co.* agt. *Beebe*, 7 *N. Y.*, 364 ; *Story on Contracts*, § 135, and cases ; *Story on Agency*, §§ 134, 139, 451, 452, and cases.)

And in cases like this, where the representations were part

of the *res gesta*, and where the inducement to the sale of
the goods, the principal will not be permitted to deny such
representations (*Bloomer* agt. *Denman*, 12 *Ill.*; 247).

Not even when they are "outside of the agent's powers,"
if the facts are peculiarly within the agent's knowledge, and
a third party acts upon them, as in this case (*Griswold* agt.
*Husen*, 25 *N. Y.*, 599).

In such cases apparent authority is the real authority as to
all parties who deal with an agent innocently (*North River
Bank* agt. *Aymer*, 3 *Hill*, 262 ; *Exchange Bank* agt. *Monteith*,
17 *Barb.*, 171, 177 ; *Mechanics' Bank* agt. *New Haven R.R.
Co.*, 13 *N. Y.*, 599).

And the agent's authority will be liberally construed (*Pole*
agt. *Leash*, and *Leash* agt. *Pole*, 9 *Jur. N. S.*, 829 ; and 8
*L. T. (N. S.)*, 645, *H. L.*)

IV. When one of two innocent persons must suffer a loss
by the acts of a third, he who has enabled such third person
to occasion the loss must bear it (*Lickbarrow* agt. *Mason*, 2
*Term.* 70 ; *Vallet* agt. *French*, 6 *Wend.*, 615, 620 ; *Root*
agt. *French*, 13 *Wend.*, 572; *Sandford* agt. *Handy*, 23 *Wend.*,
268; *Ash* agt. *Putnam*, 1 *Hill*, 302, 307 ; *Banks* agt. *Davis*,
2 *Hill*, 451, 465 ; *North River Bank* agt. *Aymer*, 3 *Hill*,
262 ; *Exchange Bank* agt. *Monteith*, 17 *Barb.*, 171, 177 ;
*Smith* agt. *Empire Ins. Co.*, 25 *Barb.*, 497, 502 ; *Dunning
& Smith* agt. *Roberts*, 35 *Barb.*, 463, 467; *Rawls* agt.
*Deshler*, 3 *Keyes*, 572; *Spraights* agt. *Hawley*, 39 *N. Y.*,
441 ; *Wilcox* agt. *Routh*, 9 *G. S. & M.*, 476; *Nicoll* agt.
*Am. Ins. Co.* 3 *Woodb. & M.*, 529, 533).

V. Under the rule established by these cases, the defendant
is clearly liable to the plaintiffs for the goods sold on his
credit, unless his agent's statement to them, that Whallon
had become interested in the business as the defendant's
partner, exonerated the defendant from such liability.

Why should the statement of the fact have that effect ?

Whallon was confessedly irresponsible, and no credit was
given to him. He was, in truth, a mere clerk or assistant

in the business—called a partner by the agent, the better to promote the interests of the business for which he was his partner's general agent. No change in the nature or objects of the business was effected by the connection of Whallon's name with it; and none was made in the mode of doing it, except in charging, marking and shipping the goods—all of which was done by the special direction of the agent clothed with power to carry on the business in such manner and by such means as he might deem most likely to promote its interests.

Moreover, notice of Whallon's connection with the business came from the person who had always been sole agent to manage the business—who was the only person the plaintiffs saw or negotiated with about it, and who, at the same time, stated that the business was the same—the responsibility the same—the Moses the same, and his agency the same as they ever had been. If one statement tended to exonerate, why should not the other equally tend to bind his father ?

In a case much like this, the supreme court of Vermont held the defendant liable (*Taggart* agt. *Phelps*, 10 *Verm.*, 318).

And the lords justices, on appeal from the master of the rolls, held that where a partnership was constituted a general agent, the subsequent change in the firm by the death of one of the partners, did not affect the agency, the duty being on the house (*Pariente* agt. *Lubbock*, 8 *De Gex.*, *MacNaughton & Gordon*, 5, 12).

VI. The plaintiffs had a right to rely on the representations of the son in the absence of any intelligence from the father ; and if the latter intended to be no longer responsible for the acts and statements of his son in respect to that business, it was his duty to notify the plaintiffs of such intention, and then no loss would have been suffered (*Story on Agency*, §§ 470, 471, and cases).

VII. Suppose, the son's statements were wholly untrue and the introduction of Whallon's name into the business, and the

direction of the plaintiffs to charge the goods to Moses & Whallon, were designed by the son to procure the goods, and at the same time exonerate the father from liability to pay for them, did not the father's previous conduct, in appointing his son his agent, and his neglect to give notice of a revocation, enable the son to succeed in his fraudulent design, and ought not the father to suffer for it, rather than the plaintiffs, under the rule above stated.

If the agency had actually been revoked, or the business changed, the father should have notified the plaintiffs of it, if he would make the revocation or change effectual to protect him against the subsequent dealings of the son with those who had been in the habit of supplying the son with goods on the father's credit (*Story on Agency*, § 443; 2 *Kent's Com.*, 614, and cases).

VIII. The fact that the plaintiffs changed the mode of marking and charging the goods, cannot reasonably be considered notice to the plaintiffs that the defendant's connection with the business, or his son's agency for it, had ceased—especially when the change was made by the direction of the agent, coupled with an assurance that there was no change in the business or the ownership of it, or in his agency to buy goods for it on his father's credit—under these circumstances, such changes would not be evidence of a change of credit even (*Storr* agt. *Scott*, 6 *Car.*, 241; *Thompson* agt. *Davenport*, 9 *B. & C.*, 86).

IX. If the defendant, by his silence as to the continuance of his son's agency for this business, has enabled the latter to induce the plaintiffs to sell their goods to irresponsible persons, he surely ought not to be permitted to deny such representations to the plaintiff's prejudice (*Broome's Com. Law*, 53, and cases; *Bank of Auburn* agt. *Putnam*, 3 *Keyes*, 343; *Craig* agt. *Ward*, 3 *Keyes*, 387).

X. The declarations of Curtis H. Moses, as general agent for this business, concerning his father's continued connection with it as a partner of Whallon, were the same in effect, as

if made by the father himself (*Barry* agt. *Foyles*, 1 *Pet. S. C.*, 311; *State Bank* agt. *Wilson*, 1 *Dev.*, 484; *Curtis* agt. *Ingham*, 2 *Verm.*, 287, 289; *Mott* agt. *Kip*, 10 *Johns.*, 478; *Wheeler* agt. *Hambright*, 9 *Serg. & R.*, 390, 396, 397; *Burt* agt. *Palmer*, 3 *Esp.*, 145; *Palethorp* agt. *Furnish*, 2 *Esp.*, 511, note).

And such declarations being part of the *res gesta* are not hearsay, but original evidence, from which a jury might fairly be asked to find a verdict against the defendant as partner (1 *Taylor on Evidence*, 541, § 539; *Doe* agt. *Haskins*, 2 *Q. B.*, 212; *Cook* agt. *N. Y. C. R.R. Co.*, 3 *Keyes*, 476).

And the verdict would stand although Whallon is not joined in the action, he being a resident of another state (*Brown* agt. *Birdsall*, 29 *Barb.*, 549).

XI. If it be urged that the plaintiff's knowledge that Whallon had become interested in the business as partner, was enough to put them on inquiry as to the continuance of the agency, it is answered:

1*st.* That the agency being once established, they had a right to presume that it continued until notified to the contrary (*Walrod* agt. *Ball*, 9 *Barb.*, 271, 275; *Cooper & Peabody* agt. *Dedrick*, 22 *Barb.*, 516).

2*d.* That if inquiry was necessary, they made it of the only person with whom they had ever had any communication on the subject, and were told by him that it still continued (*Williamson* agt. *Brown*, 15 *N. Y.*, 354, 362, 363; *President, &c. of Westfield Bank* agt. *Cornen*, 4 *Trans. of Appls.*, 442, 444).

XII. The questions whether the agent had authority—and if he had, whether he exceeded his authority, and whether the defendant was Whallon's partner or not, were questions for a jury (*Thurman* agt. *Wells*, 18 *Barb.*, 500; *Boradaile* agt. *Leek*, 9 *Barb.*, 611; *McMorris* agt. *Simpson*, 21 *Wend.*, 610).

XIII. And the evidence was sufficient to sustain a verdict for the plaintiff; and the judge erred in holding, as matter of

law, that it was not. The judgment ought to be reversed, and a new trial granted.

HERVEY SHELDON, *for respondent.*

This action was brought by the appellants to recover the sum of $10,464 50, for goods, alleged to have been sold and delivered to the defendant, at the city of New York, in September, 1865. The complaint counted on the sale and delivery of the goods, and a promise thereon to pay the price.

The defendant answered denying the complaint.

The action was tried before Justice GILBERT and a jury, in October, 1869, and the plaintiffs were nonsuited.

On the trial the following facts appeared :

The firm of Hoppock, Glenn & Co. (the plaintiffs) were merchants doing business in the city of New York.

In the fall of 1864, Chester Moses, the defendant, was carrying on business at Rochester, Minnesota.

Chester Moses resided at Marcellus, Onondaga county, New York, where he was a manufacturer of cloth.

The business in Minnesota was mainly a clothing business, and Curtis H. Moses, the son of the defendant, carried it on as his agent.

In the fall of 1864, Hoppock, Glenn & Co., sold one bill of goods to the defendant (the son, Curtis H., acting as his agent in making the purchase), and they were charged to the defendant and paid for by him.

. In the Spring of 1865, April, Hoppock, Glenn & Co. sold a bill of goods to the firm of Moses & Whallon. The goods were charged to them in the copartnership name, were shipped to them in that name, the plaintiffs demanded payment of them. They were paid for by them.

In August of the same year, the plaintiffs sold another bill of goods to the same firm of Moses & Whallon, which was

charged upon their books and directed and shipped to that firm as before.

Both these bills were paid.  They amounted, one bill to $6,368 04, the amount of the other bill is not stated, the payments were made partly in cash and partly in drafts, indorsed (probably) in the firm name of Moses & Whallon, that being the way in which they usually carried money.

In September thereatter, the bills in controversy were sold and charged, directed and shipped to the same firm.

There is no proof in the case that the defendant was actually a member of the firm of Moses & Whallon, nor is there any pretence that he was so in fact.

The salesman of the plaintiffs' firm, Mr. Comstock (who is one of the firm), states that when he sold these goods he supposed the firm of Moses & Whallon consisted of Chester Moses (the defendant) and Henry P. Whallon, and he sold them upon the responsibility of the firm and of both parties to it.

He further states that Curtis H. Moses, who made the purchase, told him that the defendant was one of the firm of Moses & Whallon.  That he supposed the goods were sold to them.  That this statement was made to him at the time the first bill of goods was sold and charged to Moses & Whallon.

These declarations are not proved to have been authorized by the defendant.

It further appeared that neither of the plaintiffs had seen the defendant, or knew him personally, or had any correspondence with him, or any communication from him until after the goods had been sold and the firm of Moses & Whallon had failed.

After the failure of the firm, and in January, 1866, one of the plaintiffs (Mr. Glenn) called on the defendant at his residence in Marcellus, and he states on his direct examination that the defendant admitted that his son (Curtis H.) " was his agent for the purpose of buying goods in New

York." That he went there to see him about this bill of goods, and it was there on that occasion that he admitted this agency.

On his cross-examination, however, he admits that on going there and presenting the bills in question, the defendant declined to pay them, saying he would not pay the bills of Moses & Whallon, but would pay anything his name was to. That thereupon, the witness threatened him with the imprisonment of his son for the misrepresentations he had made, and that he would follow him. "The old gentleman took it very moderately," and told him that he would pay any bills that were sold in his name or charged to him.

After that there was another interview between the defendant and members of the plaintiffs' firm at their counting house in New York. They undertook to state that he then admitted that his son was his agent for buying goods in New York, generally.

On cross-examination, however, he admits that the defendant did deny specifically the son's agency in this transaction.

Mr. Hoppock, another member of the firm, states the same conversation which was held by him with the defendant.

He stated to the defendant the ground on which they considered him liable for the goods, and the reply of the defendant which was, that Curtis H. had been his agent, but was no longer, to which the witness responded, that former bills had been charged to Chester Moses and had been paid, and they "had never known any change."

On his cross-examination he admitted, that his understanding of the conversation was, that he denied positively the agency of his son in buying this bill.

That he also told him, that he had been his agent, but that his agency ceased on the first of January, 1865.

I. There was only a single transaction in which Curtis H. Moses bought goods of the plaintiffs as the defendant's agent; that purchase was in the fall of 1864, and the bill was paid

This would not be sufficient authority for the plaintiffs afterwards to sell other bills upon the defendant's credit, upon the presumption of a continued agency.

II. But if a single transaction would be sufficient ground for such a presumption, it would be answered by the fact, that the assumed agent made no such representation at the time of the purchase of the bill in suit, nor was any credit given to the defendant alone. On the contrary, the goods were purchased on the credit of the copartnership firm of Moses & Whallon, and after several bills had been sold to and charged and shipped to that firm, and paid for by them, and several months after any transactions between the plaintiffs and the defendant.

III. The credit was given in this case, not upon the representation that the purchaser, (Curtis H. Moses) was the agent of the defendant, but upon the false representation that the defendant was a member of the firm of Moses & Whallon. This was the ground taken by the plaintiffs in demanding payment of the defendant. This excludes the idea that the plaintiffs sold to and can recover of the defendant on the ground that they had no notice of the termination of his agency.

IV. Notice of the fact, that an individual has formed a copartnership, or that additional members have been admitted into a firm, is sufficient to determine the authority of an agent; and to enable him to act after such notice there must be a renewed authorization (*Callanan & Ingham* agt. *Van Vleck and others,* 36 *Barb.,* 324; *Kirby* agt. *Hewett,* 26 *Barb.,* 604).

V. Three facts should be observed.

1*st.* That the agency proved by the confession of the defendant, was an individual agency, existing prior to the credit given to Moses & Whallon, and terminating on or about January 1st, 1865.

2*d.* That there is no proof whatever that the defendant

was one of the partners in the firm of Moses & Whallon, except the false statement of Curtis H. Moses, and

3d. That the sale was made and the credit given to the firm of Moses & Whallon.

There is no principle upon which it can be claimed, that the statement of Curtis H. Moses, that the defendant was the Moses of Moses & Whallon, was or is any proof of the existence of such fact.

An individual agency to buy or sell goods, does not authorize the agent to make his principal a partner, or admit him to be such. He must be produced as a witness, his declarations are inadmissible (3 *Phillip's Evidence, Declarations of Agent,* 381; 7 *Wend.,* 281).

The fact of partnership must be established by legitimate proof, and this followed up by showing the authority of C. H. Moses to buy for that firm ; neither is proved.

The fact that the credit was given to the firm of Moses & Whallon, proves notice to plaintiff that C. H. Moses was not acting as the individual agent of the defendant, and no other agency is proved or intimated (*Part* 1, *Cow. & Hill's, Notes,* 408).

VI. The principle, that " where one of two innocent persons must suffer for the action of a third, he who has enabled such third person to occasion the loss must sustain it," has no application whatever to the facts presented in this case. This principle has been applied to the case where a partner gives the note of the firm for his private benefit, which comes into the hands of a *bona fide* holder before due (*North River Bank* agt. *Aymar,* 3 *Hill,* 262).

Also to the sale and delivery of goods under false representations, and which come into the possession of a *bona fide* purchaser (*Ash* agt. *Rutman,* 1 *Hill,* 302).

But no case has made this principle applicable to the acts of an agent—when such act is manifestly outside of the agency proved.

Curtis H. Moses was the individual agent of Chester

Moses, prior to January 1, 1865, in reference to a clothing store, &c., in Rochester, Minn. That store and that agency closed and ended then.

It would be absurd to hold that the acts and statements of this agent, occurring long after the termination of his agency, when he was openly acting for the firm of Moses & Whallon, could legally bind Chester Moses.

The judgment of the supreme court, affirming the judgment at circuit, should be affirmed by this court.

CHURCH, *Ch. J.*—The difficulty with the plaintiff's case is, that there was no evidence that the defendant's testator was a member of the firm of Moses & Whallon, to whom they sold the goods in question.

Curtis Moses had previously carried on business as the agent of the defendant's testator, and had, as such agent, purchased goods of the plaintiffs, and if these purchases had been made in the same way and in the name and upon the credit of Chester Moses, without notice that the agency had ceased, the latter would have been bound; but an agency to transact business for an individual is terminated by the formation of a copartnership (*Callanan* agt. *Van Vleck,* 36 *Barb.,* 324 ; *Kirby* agt. *Hewitt,* 26 *Barb.,* 607 ; *Palmer* agt. *Stevens,* 1 *Denio,* 471). The only agency in this case was an individual agency by Chester Moses to Curtis Moses, to purchase goods and carry on business in his individual name. These goods were purchased in the name of Moses & Whallon, and the plaintiffs were, therefore, bound to take notice of the termination of the agency of Curtis Moses, and that a new authorization was necessary to enable him to purchase property on the credit of the firm. The plaintiffs claim, that the defendant's testator was a member of the firm of Moses & Whallon, but the only evidence of this was that Curtis Moses said so.

He had no more authority by acts, or declarations in behalf of Moses & Whallon, to bind Chester Moses, by virtue of his

Hoppock agt. Moses.

former agency, than he had to take in a partner without the consent of Chester Moses. He had no authority from the latter to purchase goods in the name of the firm, and his doing so, was an assumption of authority of which the plaintiffs had legal notice by the manner of doing the business.

The declarations of one member of a firm, are not evidence to prove a partnership against another member, nor can the declarations of an individual agent of one member be used for that purpose against either. I have carefully examined the authorities cited by the counsel for the appellants, and all of them are clearly distinguished from this, and none of them would justify a recovery in this case.

The judgment must be affirmed, with costs.