LEWIS L. WAGNER, Plaintiff, *v.* CHEMICAL BANK AND TRUST COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, Fifth District, December 20, 1934.

*White & Stillman* [*David B. Stillman,* of counsel], for the plaintiff.

*Shearman & Sterling* [*H. E. Compter* of counsel], for the defendant.

SHALLECK, J. Plaintiff opened a checking account with the defendant bank in January, 1934. He signed the usual signature card bearing the specimen signature " Lewis L. Wagner."

On March 6, 1934, at Miami, Fla., plaintiff was engaged in a game of chance (dice) and lost. Plaintiff issued a check for $150, payable to cash in partial payment of his loss. This check was signed " Lewis Wagner." Plaintiff contends he was cheated in the dice game and delivered the check under duress and deliberately signed the check " Lewis Wagner " instead of " Lewis L. Wagner," with the belief that the defendant bank would refuse payment by reason of the insufficient signature.

Defendant bank honored the check. Some weeks later plaintiff returned to New York city, learned that the bank had paid the check, and demanded $150 from defendant bank.

Plaintiff contends that the bank may not honor checks bearing any signature but the one appearing on the signature specimen card.

The plaintiff at no time directed the bank to stop payment on this check or notified the bank of the omission of the initial " L." from his specimen signature or the reasons therefor. The date, name of bank, location, amount, signature, in fact the entire check, is in the handwriting of the plaintiff.

Defendant contends that in view of the fact that the check and the signature were in the handwriting of the plaintiff, the bank was not only justified but under a duty to pay the check, even though signed " Lewis Wagner " instead of " Lewis L. Wagner."

The facts and law involved herein are novel in this State and, indeed, unparalleled in other States, so far as research by court and counsel could disclose.

However, section 20 of the Negotiable Instruments Law of the State of New York, in so far as it applies to the first of the five

requirements of negotiable instruments, explicitly provides that " It must be in writing and signed by the maker or drawer."

In *Palmer* v. *Stephens* (1 Den. 471) it was held that a person may execute an instrument and bind himself as effectually by his initials as by writing his name in full, and that " Figures or a mark may be used in lieu of the proper name; and where either is substituted by a party, intending thereby to bind himself, the signature is effective to all intents and purposes." Whatever doubt may exist is set at rest by the case of *Sheehan* v. *Kearney* (82 Miss. 688–691; 21 So. 41), where it was held in quoting from *Matter of Plates* (148 Penn. St. 55; 23 A. 1038), that " exactly what constitutes a signing has never been reduced to a judicial formula," but it has usually been regarded that whatever is intended as a signature is " a valid signing, no matter how imperfect or unfinished or fantastical or illegible, or even false, the separate characters or symbols " used may be.

It is of importance to bear in mind that section 20 of the Negotiable Instruments Law does not specify *any particular form of signing.* It merely requires that the instrument be in writing and signed by the maker or drawer. Thus, it has been held, that a cross-mark is a good signature; also, initials, and even numerals, when used with the intention of constituting a signature. (See cases collated and cited in *Pearlberg* v. *Levisohn,* 182 N. Y. Supp. 615, at p. 617.)

In 8 C. J. (§ 197, p. 107) it is said that " The signer's full name is not needed to constitute a sufficient signature," and " It is not necessary that the entire name should be written." (58 C. J. § 5, p. 721.)

In *Kemp* v. *McCormick* (1 Mont. 420) the rule of estoppel is brought into operation, the court holding that where a person abbreviates his christian name he is estopped to deny the validity of his signature. The all-important thing is the question of identification. It was held in *Zann* v. *Haller* (71 Ind. 136) that the signing of a name to a mortgage as Catherine was sufficient where there was no question as to the identity of the person using the name. (See, also, 36 Cyc. 448.) It is the settled rule that the law recognizes only one christian name, and it has been held that the insertion or omission or mistake in a middle name is entirely immaterial. (See 29 Cyc. 265.)

There is nothing in section 112 of the Negotiable Instruments Law in conflict with what has been hereinabove set forth. Subdivision 1 of section 112 of said law merely holds that the acceptor, by accepting the instrument, admits, among other things, the genuineness of the drawer's signature, and his capacity and authority

to draw the instrument. This has been the law ever since the famous decision in *Price* v. *Neal* (3 Burrows, 1354), and has been adopted by the Court of Appeals in *Title Guarantee & Trust Company* v. *Haven* (196 N. Y. 487, 492).

The contract between a bank and depositor is a simple one. The bank agrees, so far as there is money on deposit with it, to pay to the order of the depositor the checks drawn upon it. In connection with that contract, the bank, for its and the depositor's protection, receives a specimen of the latter's signature, so that it will not pay out on any forged order. In the absence of any specific instruction by the depositor to the bank in connection with its agreement, the bank is bound to honor the depositor's orders if it feels reasonably assured of the authenticity of the depositor's signature. Of course, if the parties agree that the bank shall honor no signature except that which has some particular identification mark, such as a blot after the name, or a star over a letter of the name, the bank must strictly adhere to its contractual duty.

There is a greater duty upon a bank with relation to its depositor than between the ordinary drawer and drawee of commercial paper. This added duty of care devolves upon it by reason of the volume of business done with each depositor and the continuing character of the obligation it undertakes to perform. It must be reasonably convinced, before paying out its depositor's money, that it is upon the true and valid order of such depositor. But it need not go to such extreme ends to be assured as would hamper and impede the orderly conduct of its business. Consequently, unless subject to special engagement, the bank may pay out and honor a check on a particular account if the signature upon it reasonably conforms to the specimen signature it has in its possession.

Here, the signature copy contained nothing extraordinary. It did not change the character of the defendant's undertaking; it was part of the ordinary contract of bank and depositor. Surely a person who signs his name on a check, adding or omitting his middle name, or misspelling his christian name, cannot repudiate his signature and throw the burden of liability on the bank, in the absence, at least, of fraud or bad faith on the part of the bank. There is a presumption that the drawer of the check intended the bank to honor his signature, and if the signature upon which payment has been made is sufficiently identified as the signature of the drawer, the drawer is liable.

Sometimes a bank may be put on notice in other ways than by signature that a check is of questionable validity. For instance, where a depositor's account shows that the average checks he drew were of a small amount, when suddenly there appears a check

of many times the amount; or when a bank, after many years of dealing with a depositor, learns that all of his checks are presented through banks in a particular and restricted area, and there appears his check through a bank thousands of miles away with a slight variation in the specimen signature, these circumstances may put a bank on inquiry from the depositor as to the valid character of the check.

In the instant case no such facts are apparent, and the evidence here especially opposes any such further inquiry by the bank. Further, the bank, when the check was presented, saw: (1) The check was written entirely in the plaintiff's handwriting; (2) the signature thereon compared favorably and reasonably with the specimen signature in its possession; (3) the amount of the check was not unusual, since checks of greater amounts were made by the depositor within one month of the check upon which this action is brought; (4) that all of the checks drawn during February and March were presented through the same Miami Beach, Fla., bank; (5) there was no " stop payment " order; and (6) no notice had been given to it that the depositor meant the check to be invalid. Certainly, under these conditions the defendant was justified in paying the amount of the check. Indeed, if it did not honor the check, it might be responsible to its depositor in the event the latter became liable at a suit by the holder thereof against him. (*Baker* v. *First National Bank of Jackson*, 147 Miss. 530; 113 So. 205.)

The balancing of equities, therefore, demands that the plaintiff fail.

Judgment is accordingly directed in favor of the defendant, dismissing the complaint on the merits.