CALLANAN & INGHAM *vs.* VAN VLECK and others.

Under ordinary circumstances, an authority given by a partnership firm, to its agent, to advance moneys for the purchase of notes or bills to be remitted to the firm, will not justify the agent in continuing to make such advances, after being notified of a change in the firm, by the admission of new partners. There must be a renewed authorization by the new firm.

But if the bills so purchased by the agent, after notice of the change in the firm, have been remitted to the firm, received and receipted by the new members, retained by them, and used and applied in their business, this will justify the agent in inferring that the authority previously given by the old firm was continued by the consent of the new one; and is sufficient to render the new firm liable for the amount of such advances.

APPEAL from a judgment entered upon the report of a referee. The only point in controversy was whether the defendants, under the facts of the case, were entitled to charge against the firm of A. J. Stevens & Co., of which the plaintiffs were the partners and are the assignees, the sum of $6400, expended for the purchase of the notes or bills of the Agricultural Bank of Tennessee, and by them remitted to said firm. The facts in regard to the transaction are these: Prior to June 1st, 1857, Andrew J. Stevens was engaged in business of banking, at Fort Des Moines, Iowa, under the name of A. J. Stevens & Co., and opened a bank account in such name with the defendants' house at New York. Stevens in fact, at that time, had no partners, but of this the defendants were ignorant. On the 27th of April, 1857, the

Callanan *v.* Van Vleck.

defendants received from A. J. Stevens & Co. a letter of that date directing the defendants to pay John Thompson for such packages of the Agricultural Bank of Tennessee, as he might hand them, and forward the same to A. J. Stevens & Co. at Fort Des Moines aforesaid, and charge the same to them. These instructions were never countermanded, and the defendants immediately began to act under them, and continued so to act until the close of the accounts between the two firms, in August, 1857. On the 1st of June, 1857, the plaintiffs, Callanan & Ingham, were admitted as partners in the said firm of A. J. Stevens & Co., and a letter announcing that fact was sent by the said firm of A. J. Stevens & Co. which contained the signatures of Stevens and of Ingham, and requested the defendants to render a careful statement of "our account" to that date, and stating that "our drafts" would be signed thus and so, and signed in the firm name of A. J. Stevens & Co. This letter and all others thereafter written in the business of A. J. Stevens & Co. to the defendants, were written on sheets of paper containing the same printed bill-heads used by the firm prior to that time. The defendants continued to purchase and remit the bank bills of the Agricultural Bank, in the same manner previously adopted by them, and all these bills were directed to A. J. Stevens & Co., and received by that firm, and used in its business. All the packages of bills were, in fact, received by the plaintiff Ingham, and receipted by him in the name of the firm of A. J. Stevens & Co., who had the avails of said packages, and used the same in their business, paying them out in the ordinary way to their customers. After the plaintiffs were admitted into the said firm, no change was made in the title or manner of keeping the account between the firm of A. J. Stevens & Co. and the defendants, but on the contrary, one continuous account between the two firms was kept, from its commencement in October, 1856, to its close, in September, 1857, and the balances of debt or credit in each monthly account were carried into the next succeeding

account. In the said account, remittances to the defendants were credited when received, and drafts drawn upon the defendants were charged when paid, and the several drafts drawn were in all cases numbered; and the number of the drafts of the firm, after the admission of the plaintiffs as partners, followed consecutively, in regular order, those used by the firm previous to that time; and many drafts drawn previous to that time were not charged until a long time afterwards. When the plaintiffs came into the firm there was no closing or winding up of its old business, but the same was continued and kept on in the same way in which it had been conducted; the same office was occupied, the same clerks engaged, the same books used, and the same letter and billheads adopted; and instead of closing the old account, the plaintiffs purchased of Stevens an interest in the balance due from the defendants, and such balance was debited to the defendants and credited to Stevens. It appeared that when the first package was received by Ingham, he asked his copartner Stevens about it, who told him to take the money and use it in the business of the firm, and give him credit for it; and that the plaintiffs did so. It appeared, also, that the defendants had acted throughout in good faith, relying on the instructions contained in the letter of April 27, 1857, and on the belief that the new partners ratified and acquiesced in the said arrangement.

The complaint alleged that on and about the 25th of August, 1857, the defendants received, on different days, large sums of money, subject to the order of A. J. Stevens & Co. That at the last day the defendants so held on deposit $10,136.89. That on that day A. J. Stevens & Co. directed the defendants to transfer all sums due to them over to the plaintiffs, under the firm name of Callanan & Ingham, but the defendants only transferred, under such directions, $3736.89, leaving a balance in their hands of $6400, which sum belongs to the plaintiffs, Stevens having for value received transferred the claim to the plaintiffs, and which sum

the defendants had refused, on request, to pay to the plaintiffs. That the pretense for retaining the same made by the defendants was, that they had paid out the balance claimed, to redeem the bills of the Agricultural Bank of Tennessee, and that such redemptions were made by the authority of A. J. Stevens & Co.; but the plaintiffs averred that such redemptions were made without the authority, order or sanction of A. J. Stevens & Co. By the pleadings, the issue presented was confined to the single question of authority to pay out that sum to redeem the notes of the Agricultural Bank of Tennessee. On the trial a stipulation, signed by the attorneys for the respective parties, agreeing on the principal facts, was given in evidence, by which this single question was made the turning point in the case.

The referee reported, as a conclusion of law from the facts found by him, that the plaintiffs had no cause of action against the defendants, and that the defendants were entitled to judgment.

The plaintiffs appealed.

*L. Tremain,* for the appellants.

*John E. Burrill, Jr.* for the respondents.

CLERKE, J. The only question here is, whether the defendants were justified in continuing to make the appropriations after the formation of the new firm, which Stevens had authorized them to make some time before, when he was the only member of the firm of A. J. Stevens & Co.

Under ordinary circumstances, the authority thus given by Stevens would not be sufficient to justify the defendants in continuing these appropriations, without a renewed authorization by the new firm. It would have been the duty of the defendants, on being informed of the change in the concern, to inquire of the new firm whether they should continue to do what Stevens alone had previously directed them

to do. But the referee finds that Ingham, one of the new members, received the packages; that he receipted them to the express company, in his own handwriting, in the name of the firm; and that the avails of the packages were used by the new concern, who used them in their business, paying them in the ordinary way to their customers. To be sure, neither of the new members had any knowledge, prior to the receipt of the monthly account from the defendants in August, that there had been any arrangement made with Stevens, authorizing the defendants to pay Thompson for the packages; and Ingham supposed, when he received them, that they came directly from Thompson, and that they belonged to Stevens. This induced the new firm to make allowances, and to give credit to Stevens, which they otherwise would not have done; and for these advances they have never been reimbursed. But still, as we have seen, the new firm actually obtained the packages, receipted them in the handwriting of Ingham, one of the new members, retained them, and used them in their business. This was sufficient to induce the defendants to believe that the authority previously given by Stevens alone, was continued by the consent of the new firm.

The plaintiffs, therefore, are liable for those advances, not merely by virtue of the authority given in April, 1857, by Stevens, but because they were made for the benefit and by the implied authority of the new firm.

The judgment should be affirmed with costs

LEONARD, J. The fact that the new firm had the money sent by the defendants, is alone sufficient to charge them. I concur.

INGRAHAM, J. also concurred.

Judgment affirmed.

[NEW YORK GENERAL TERM, February 3, 1862. *Ingraham, Leonard* and *Clerke,* Justices.]