CHARLES E. FOSTER et al., Appellants, *v.* JOHN W. BOOKWALTER
                          Respondent.

1. ATTORNEY AND CLIENT — RELATION DISSOLVED.   The relation of
attorney and client in respect to services in procuring and defending cer-
tain patents is dissolved when with the knowledge of the attorneys, who
prepared the papers for the purpose, the client transferred all his right
and interest in the patents to a corporation for the benefit of which all the
subsequent services of the attorneys in respect to the patents were
rendered.

2. APPEAL — REVIEW OF JUDGMENT OF REVERSAL.   A judgment of
the General Term reversing a judgment of the Trial Term entered upon
the report of a referee will be affirmed when the preponderance of evi-
dence against the decision of the referee is so great as to justify the
reversal, because it can be said, with a reasonable degree of certainty, that
the decision was erroneous.

*Foster* v. *Bookwalter*, 78 Hun, 352, affirmed.

(Argued February 8, 1897; decided March 2, 1897.)

APPEAL from an order of the General Term of the Supreme
Court in the first judicial department, entered July 22, 1894,
which reversed a judgment in favor of plaintiffs entered upon
the report of a referee and granted a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Esek Cowen* for appellants.   There is nothing in the opinion
of the General Term or in the record which has any tendency
to disturb the disposition made of this case by the referee.
(*Colgrove* v. *Tallman*, 2 Lans. 100; *M. M. P. Co.* v. *Rem-
ington*, 109 N. Y. 145.)

*George Hoadly* and *Henry L. Scheuerman* for respondent.
The relation of attorney and client between the plaintiffs and
defendant was terminated by the facts proved, and the order
of the General Term should be affirmed.   (*Hoppock* v. *Moses*,
43 How. Pr. 201; *Schlater* v. *Winpenny*, 75 Penn. St. 321;
*Walker* v. *Dennison*, 86 Ill. 142; *Rome* v. *Rand*, 111 Ind.
205; *Martine* v. *I. L. Ins. Co.*, 53 N. Y. 339; *Salisbury* v.

*Brisbane,* 61 N. Y. 617; *Trumbull* v. *Nicholson,* 27 Ill. 150; *Gilbert* v. *Holmes,* 61 Ill. 548, 560; *Robb* v. *Mudge,* 14 Gray, 539.)

MARTIN, J. This action was brought to recover of the defendant the value of professional services rendered by the plaintiffs, as attorneys, in procuring and defending certain patents which were issued to the defendant and others who were associated with him. As to a portion of the services there is no dispute, the defendant having paid or tendered the amount due therefor. The patents as to which most of the plaintiffs' services were rendered related to certain improvements in the art of manufacturing iron, steel and castings. Some of these improvements were invented by the defendant, and he acquired an interest in others by assignment. All the patents, as to such improvements, were at first the property of the defendant or of the defendant and several persons who were associated with him. Subsequently they organized a corporation under the laws of the state of New Jersey, known as the Bookwalter Steel & Iron Company. The defendant and his associates, including the plaintiffs, who had become part owners thereof, transferred all their rights and interest in and under such patents to that corporation, and received its stock in payment therefor. A large portion of the services performed by the plaintiffs, for which they recovered in the trial court, was in procuring and defending the rights of such corporation under the patents then belonging to it. The only controversy between the parties relates to the services which were performed by the plaintiffs while the corporation was the owner of the property in regard to which they were rendered.

The learned referee, before whom this action was tried, held that the defendant was liable as well for the services performed for the benefit of the corporation as those rendered for the defendant's benefit, or in pursuance of his express employment, and directed a judgment against him for the full amount of the plaintiffs' bill, which included all their services

for which they had not been paid. Upon an appeal from that judgment the General Term reversed the judgment of the trial court and granted a new trial.

The case comes into this court upon an appeal from that order, accompanied by a stipulation that, if the order is affirmed, judgment absolute shall be rendered against the plaintiffs. The judgment of the trial court was reversed for errors of law and of fact. It seems from the record that it was reversed upon the ground that the decision of the referee was against the weight of the evidence; that he also erred in finding that William E. Lown, who was a stockholder of the corporation and the manager of its business, was the agent of the defendant, and that the latter was liable for the services performed in pursuance of his direction.

It is well settled by this court that, in reviewing the determination of a trial court on questions of fact, when the evidence is conflicting, an appellate court is not warranted in reversing upon the sole ground that, in its opinion, the trial court should have reached a different conclusion, but that to sustain a reversal on the facts by an intermediate court, it must appear that the decision of the trial court is against the weight of evidence, or that the proof so clearly preponderates in favor of a contrary result that it can be said, with a reasonable degree of certainty, that the trial court erred in its conclusions. (*Baird* v. *Mayor, etc.*, 96 N. Y. 567; *Lowery* v. *Erskine*, 113 N. Y. 52, 55; *Weber* v. *Bridgman*, 113 N. Y. 600, 607; *Bernheimer* v. *Rindskopf*, 116 N. Y. 428, 436; *Aldridge* v. *Aldridge*, 120 N. Y. 614, 617; *Devlin* v. *Greenwich Savings Bk.*, 125 N. Y. 756; *Phœnix Iron Co.* v. *Hopatcong & Musconetcong*, 127 N. Y. 206, 212; *O. P. R. R. Co.* v. *Forrest*, 128 N. Y. 83, 93; *Barnard* v. *Gantz*, 140 N. Y. 249, 253; *Cook* v. *N. Y. E. R. R. Co.*, 144 N. Y. 115, 117.) It is equally well settled that, upon an appeal to this court from an order granting a new trial, the appellant takes the risk of every exception appearing upon the record, and the respondent may sustain the order by showing any legal error upon the part of the trial court. (*Mackay* v. *Lewis*, 73 N. Y. 382;

*Noyes* v. *Wyckoff*, 114 N. Y. 204, 206; *Roberts* v. *Baum-garten*, 126 N. Y. 336; *Rose* v. *Hawley*, 133 N. Y. 315, 321; *Reed* v. *McConnell*, 133 N. Y. 425, 435.)

The first question to be considered is, whether, under the rule stated, the General Term was justified in holding that the decision of the referee was against the weight of evidence. In examining this question, it will be impracticable, within the proper limits of this opinion, to examine or refer to all the evidence bearing upon it. Consequently, the most we shall attempt to do is to refer briefly to some of the salient facts in the case upon which the learned General Term based its decision.

The plaintiffs were fully aware of the fact that, so far as the services in controversy are concerned, they were performed for the benefit of the corporation, and not for the benefit of the defendant. That they well understood this fact is shown by the correspondence between the parties and between the plaintiffs and Lown, who managed the affairs of the corporation. Besides, the plaintiffs were stockholders and also prepared the papers by which the defendant and his associates transferred to the corporation all their rights and interests in the patents in regard to which such services were rendered. While it is true that, before such transfer, the relation of attorney and client existed between the plaintiffs and defendant, still, when the transfer was made, the plaintiffs knew that the defendant had no interest in the subject-matter to which their services related, except as a stockholder in the corporation. Under the circumstances, we think the transfer to the corporation dissolved the relation of attorney and client between the parties as to the subject-matter which was thus transferred. It seems to be an established rule of the law relating to principal and agent and attorney and client that, when the interest of the principal or client in, and his power over, the subject-matter to which the agency relates are extinguished, it dissolves the relation between the parties. (Story on Agency [8th ed.], § 499; *Hoppock* v. *Moses*, 43 How. Pr. 201, 214; *Callanan* v. *Van Vleck*, 36 Barb. 324; affirmed

22

41 N. Y. 619; *Kirby* v. *Hewitt,* 26 Barb. 607; *Robinson* v. *Brennan,* 90 N. Y. 208.)

In *Robinson* v. *Brennan* the plaintiff in another action recovered a judgment, and with the knowledge of his attorney assigned it to the plaintiff Robinson, which was also known to the sheriff to whom executions had been issued upon the judgments so assigned. Afterwards, the attorney for the plaintiff in the first judgment gave directions to the sheriff as to the manner in which he should apply the money in his hands arising from a sale of the property of the defendant on such executions, and this court held that, if the judgments had not been assigned, the attorney in the original action would have had authority to give directions to the sheriff, which would have been binding upon the plaintiff; but when the judgments were assigned to Robinson, the plaintiff in the former judgment ceased to have any interest therein, and the authority of the attorney, who knew of such assignment, was thereby in fact revoked.

Moreover, a careful study of the evidence fails to disclose that the defendant retained the plaintiffs to perform the services in controversy by any express agreement, although the correspondence between the parties shows that the defendant was interested in having the patents owned by the company defended, and in securing for the company such improvements as were made by him in regard to his inventions. It can scarcely be said that the evidence proves anything more. It is, at least, consistent with the theory that the plaintiffs' services were rendered for the corporation, and mainly inconsistent with the plaintiffs' claim.

In December, 1889, the plaintiffs wrote to Lown that they realized the importance of patenting the various plans that had been submitted to them; that some were likely to be of considerable value, but that they could say frankly that, in connection with their investment of twenty thousand dollars (in the stock of the corporation), the large amount they had paid out in the way of fees, etc., for the company, and the considerable delay in the payment of outstanding bills, they were in

such a condition that they could not advance any more money without either borrowing or disposing of securities, which they did not wish to do, and then added : "We know the condition of the affairs of the company and have not very vigorously pressed for payment, but the failure to make this payment has subjected us to considerable inconvenience. The company has not offered a cent's worth of advantages to us in any way, and we feel perfectly justified in now urging an immediate payment of our bill. We think we have waited as long as, or longer than, the utmost courtesy and consideration demand."

Again, on December 28th, they wrote Lown : "And if the Co. desire our services further, they can only be had upon a full settlement and arrangement for prompt payments hereafter."

On the fifth of June they wrote the defendant about an account not relating to the business of the company, as follows : "We send the bill in this case to you, as the matter has no connection with the company in any way."

The foregoing, although a very slight portion of the correspondence between the plaintiffs and Lown and the plaintiffs and the defendant, illustrates its character and shows quite plainly that the relation of attorney and client as to the matters in controversy did not exist between the plaintiffs and the defendant, but that the corporation was understood by the parties to be the plaintiffs' client in that respect.

Again, on the seventh of October, 1889, the plaintiffs wrote to Lown inclosing a bill which was in form against the defendant for all their services up to that date in respect to the patents and interferences, in which they stated : "We presume that the charges for the interference should be made against the Co., but we have had no authority to do so. Please advise us whether the Co. assumes the charges for the applications to be made hereafter, as well as for the interference business."

On the ninth of the same month the defendant wrote the plaintiffs : "Mr. Lown has shown me the account you have

rendered to the B. S. & I. Co. Now, I find you have my personal account mixed up with it. As I desire to keep things separate, you will please make out new accounts . . . one confined wholly to items concerning the B. S. & I. Co., and the other, those appertaining to my matters. In my personal acct. there should be included all expenses of all applications for my patent in foreign countries, the churn device, the button hook, cost of examining R. R. tie, etc. If you will send to me personally my account so made out, I will remit amt. due."

On the eleventh the plaintiffs wrote to Lown, stating, among other things: "We also inclose to Mr. Bookwalter his accounts, separated as required. As regards future charges, we are willing to make them against the company, but we must have instruction to that effect from the company itself."

The next day Lown replied to this letter, stating: "I handed Mr. B. the acct's. The smaller one he took to the other office, and I presume will send you a check to-day." The other account was left at the office of the company.

On the sixteenth of that month, the defendant wrote the plaintiffs: "Find enclosed dft. for $895 in full of account rendered 10th inst." On the seventeenth the plaintiffs returned the bill to Bookwalter, receipted, with a letter, stating: "Your favor enclosing check to pay the enclosed receipted bill at hand, for which accept our thanks," and nothing whatever was said about the bill which related to services for the corporation.

It seems almost impossible to read the evidence and correspondence between the parties in relation to this subject, of which the foregoing is a small part, without reaching the conclusion that the proof so clearly preponderated in favor of a conclusion contrary to that reached by the referee as to render it obvious that he erred in his conclusions. We think the General Term was fully warranted in holding that the decision of the referee was against the weight of evidence, and in reversing the judgment upon that ground.

We are also of the opinion that the learned referee erred

in finding, as the record indicates he did, that Lown was the agent of the defendant. We have examined this case to find evidence to show that the defendant appointed Lown his agent, recognized him as such, or ratified his acts, but in vain. Moreover, Lown testified that he was never the agent of the defendant. While it is true that there is some evidence that tends to show that the plaintiffs may have assumed that Lown was acting for the defendant, yet it also shows that the services which they performed were not for the defendant, but for the company alone, and that the letters of Lown generally related only to matters of the company. While in the great volume of correspondence which passed between the plaintiffs and Lown there may perhaps be found expressions from which it might be inferred that Lown was the defendant's agent, still, as there was no evidence showing that any of these statements were made by or known to the defendant, the evidence was insufficient to establish any such agency, as agency cannot be established by the declaration of an agent or a third person, or by his acts, which are not shown to have come to the knowledge of his supposed principal.

Nor do we find in the record any such facts as would fairly justify an implication on the part of the plaintiffs that Lown was the agent of the defendant. Although the plaintiffs testified that they understood that such was the fact, they also testified that they merely inferred it, without disclosing any grounds or circumstances from which such an inference could be properly drawn. The claimed admission of the defendant, that he had given Lown instructions to do certain things in relation to the business of the company of which he was a director, would not justify such an inference.

Without any further discussion of the evidence, it is clear that the General Term was justified in holding that it was insufficient to show that Lown was the agent of the defendant, or at least in holding that the preponderance of evidence to the effect that he was not such agent was so great as to justify that court in reversing the judgment upon the ground that it was against the weight of evidence.

The discussion of this case might be prolonged, as there are several other interesting and important questions that were presented by counsel; but, as none of them would in any event change the result we have already reached, and as it is manifest that the order of the General Term must be affirmed, no further examination of the case is deemed necessary.

The order should be affirmed and judgment absolute ordered against the plaintiffs.

All concur.

Ordered accordingly.