JOSEPH R. SOLOMONS, Appellant, *v.* LOUIS L. RUPPERT and ELLEN L. RUPPERT, Respondents.

*Evidence establishing the partnership relation.*

In an action to procure a dissolution of a partnership and an accounting, it appeared that the plaintiff had entered the employment of the defendant at a salary, with the expectation on the part of both of their ultimately forming a partnership in the business then carried on by the defendant; that the plaintiff subsequently demanded that the defendant should comply with his promise and admit him to partnership, and thereafter renewed his demand that he should have a half interest in the business, to which the defendant replied : " All right, you shall have it on the first of January," the terms of the agreement being that the plaintiff should pay for such half interest $5,000 in monthly installments, to be deducted from his half of the proceeds of the business. No written articles of copartnership were then prepared, and on the first of January the defendant stated that he had not had time to prepare the articles, but that the partnership could continue from that time, and he would have the articles prepared, which he did in the succeeding April, and submitted them to the plaintiff, who refused to sign them, claiming that they did not embody the whole agreement.

In March of the next year, a lease for ten years of a building in which the business was to be carried on was executed by both the parties as their joint act; and the plaintiff, after the first of January, drew for some three years from the earnings of the business a sum considerably in excess of his previous salary.

*Held,* that the circumstances justified the conclusion that a partnership relation existed between the parties.

APPEAL by the plaintiff, Joseph R. Solomons, from a judgment of the Supreme Court, in favor of the defendants, bearing date the 7th day of April, 1898, and entered in the office of the clerk of the county of Kings, upon the decision of the court, rendered after a trial at the Kings County Special Term, dismissing the complaint upon the merits.

*George W. Wingate,* for the appellant.

*George D. Beattys,* for the respondents.

HATCH, J.:

This action was brought to procure the dissolution of a copartnership and for an accounting. The issue raised by the pleadings, and litigated upon the trial, was the existence of the copartnership. Upon this issue the court found that some of the testimony indicated the existence of a copartnership, and that the defendant Louis L. Ruppert, who is hereafter referred to as the defendant, promised to take the plaintiff into partnership with him, and at times acted as though such partnership was actually consummated; but that the weight of testimony was against its existence, and, therefore, the complaint was dismissed. We are brought to the conclusion that such finding is against the weight of the testimony, when the undisputed facts are considered in connection with the other testimony and the acts of the parties in connection therewith. It is quite evident that when the plaintiff left his position in New Jersey and entered the employ of the defendant, it was with the expectation of ultimately forming a partnership in the business then carried on by the defendant in Brooklyn. That this was then in the minds of both parties is fairly to be gathered from the testimony, and is supported by the finding of the court. The version of the plaintiff is that he entered the employ of the defendant in May, 1892, at a salary of twenty dollars a week, which was subsequently raised to twenty-five dollars a week. In August, 1893, he demanded that the defendant should comply with his promise and admit him to partnership. In October of the same year, he renewed his demand that he should have a half interest, and the defendant replied: "All right, that I should have it on the first of January, 1894." The terms of this agreement were that plaintiff

should pay for such half interest $5,000 in monthly installments, to be deducted from plaintiff's half of the proceeds of the business. No written articles of copartnership were then prepared, and on January first, plaintiff asked defendant if he had had the articles prepared; defendant replied that he had not, as he had not had time, but that the partnership could continue from that time and he would have the articles prepared. In April, 1894, the defendant presented to the plaintiff written articles of copartnership, which the plaintiff refused to sign, claiming they did not embody the whole agreement. Upon this point the plaintiff testified that he would not sign, and wanted to consult a lawyer; the defendant replied that he did not see the necessity for this course, " and we would go right along and do business as we had been doing;" that was to divide the proceeds. The defendant denied making this statement, and testified that he said: "If you don't sign those papers, you will never sign any other; there will be no agreement made; what is good enough for me is good enough for you." He further testified that this ended the negotiation for a partnership; that none had been before agreed upon, and none was thereafter consummated. By the terms of the agreement proposed by the defendant, the plaintiff was to have one-half of the dental property mentioned therein for two years and three months from the 2d day of January, 1894, for the sum of $5,000, payable in twenty-seven payments secured by notes, six of which should be for $150 each, with interest at six per cent, payable in two, three, four, five and six months from date, and twenty-one notes for $200 each, with interest, payable monthly, distributed over twenty-seven months, the whole period covering both sets of notes and equalling that of the lease. At the expiration of this time, the property was to be transferred to the plaintiff by bill of sale. The title to the property was to remain in the defendant during the term of the lease. Upon the expiration of this period and the execution of the bill of sale, the defendant would take the plaintiff into partnership. In the meantime the plaintiff was to have one-half of the earnings of the business, but no control of it until the partnership was formed. It is apparent, from the testimony of the plaintiff and this agreement, that the arrangement contemplated the payment of $5,000 for plaintiff's share in the business; that this sum was to be obtained from

the proceeds of the business, and that the same was to begin with the beginning of January, 1894. For, while the agreement was not prepared until April of 1894, by its terms it was to take effect upon the 2d day of January, 1894. As the preparation of the agreement was the act of the defendant, it must, we think, be conclusively presumed that the date at which the arrangement was to go into effect was as early as the date mentioned therein, which corresponds with the plaintiff's version in this respect.

The real issue presented for solution was, did the parties agree to become partners on this date? The terms, as then understood by both parties, were practically conclusive upon these points, *i. e.*, the amount of the sum to be paid, the time of payment, and the source from which the money was to be obtained with which to pay. The point in dispute is, did the defendant waive the provision of lease of the property and consent to an immediate partnership beginning in January? It is well settled that a writing is not essential to the validity of an agreement of copartnership, and it may be established by any competent proof. (Coll. Part. § 2; 2 Greenl. Ev. § 481.) The question presented is to be largely determined upon proper construction of the acts of the parties thereafter, and upon undisputed, or at least, undisputable testimony. At the time when the negotiations were had the business was being conducted at 210 South Eighth street. On May 1, 1895, it was moved to 202 of the same street, on the corner, and a lease taken of the whole building under date of March 14, 1895. This lease was executed by both the plaintiff and defendant as their joint act; each furnished a surety for its fulfillment, and each engaged to pay the rent and keep the property in repair. The term was ten years from the 1st day of May, 1895, and the lease contained a clause whereby the lessor agreed not to rent the premises 210 South Eighth street for the business of dentistry. The whole of the provision of the lease shows that the parties thereto took these premises jointly, and for the benefit of the business in which they were engaged, stipulating against possible competition, so far as the lessor could control the same. By this instrument the plaintiff obtained a right which was clearly a property interest in connection with the business carried on in the structure rented, and under it is entitled to have his prop-

erty right protected. Of this right he cannot be divested any more than the defendant can be of his interest.

The complaint avers that the plaintiff is possessed of this leasehold interest in partnership with the defendant, and that it is a valuable property right. It further avers that the defendant has assigned, without the consent of the plaintiff, all of the property connected with this business. While the answers of the defendants deny any interest in the plaintiff, yet the leasehold interest in the plaintiff is established by the undisputed testimony, and as to this interest at least the plaintiff is, as against both defendants, entitled to an accounting, and a sale of the same, even though he be held to have failed in establishing a general interest as a partner in the whole business. The averments of the complaint were sufficient to raise this question, the prayer for relief was broad enough to cover it, and, under the general equitable power of the court, a proper subject was presented for its cognizance. It should have laid hold of this and granted such relief as was proper even though it went no farther. But, aside from this consideration, we think that the lease, in connection with the other proof, is practically conclusive upon the question of a partnership interest in the plaintiff in this business. It is so incredible as to pass belief that the plaintiff should engage himself in a lease, having no other object than the prosecution of this business, for a period of ten years, thereby incurring a liability of $9,600, if he had no interest therein. If he was a mere employee, then we must consider his act as a pure gratuity. In this aspect his generosity passes the bounds of credulity. His engagement was only from week to week; he might be discharged at the expiration of any week and thereby cease to have any interest in or connection with the business and yet be incumbered with the load of this lease.

The explanation of the defendant, that the plaintiff executed the lease in order to secure living rooms for himself and family, is not satisfactory. There is no such provision in the lease nor any suggestion therein of any such right reserved to the plaintiff. If called upon to make proof, he could not contradict the lease; and if he had no interest in the whole, he had none in a part. He denies that any such arrangement was made, and if it was, it is conceded that it was never carried out. On the contrary, the defendant occupied the

rooms which it is claimed were reserved for the plaintiff, and under this claim the plaintiff not only received no benefit but only a continuing burden against which the defendant in no wise secures him, and, while conceding his liability, denies him any interest or security. If it be considered that this lease was executed in pursuance of an agreement of partnership, then it is consistent with the plaintiff's version of such agreement and with the act of the defendant in executing the same jointly with the plaintiff and in securing exclusive right for the prosecution of the dental business in that locality.

It also appears by the proof that after January 1, 1894, the plaintiff changed radically his course of conduct in connection with this business. No claim is made that prior to this time he in any manner interfered with the receipts when the defendant was at the office. Afterwards this was of common occurrence and was the occasion of some difficulty. The books, however, show that the plaintiff, while drawing generally about $50 a week, frequently drew more, and in the aggregate considerable amounts above this sum. At $50 a week it amounted to $2,600 yearly. Yet, in 1895, plaintiff drew $2,914.06, an excess of $314.06. In 1895 he drew $3,030.39, an excess of $430.39. In 1896 he drew $2,817, an excess of $217. Thus, for these three years the excess above a salary of $50 a week was $961.45. This was done to the knowledge of the defendant. The items appeared upon the books, and the defendant protested against this course. The defendant also testified that the plaintiff did not assert any right to retain this money as a partner; that he asked for an accounting and return of this money; that he did not get it back, or any part of it, and that he still continued him in employ. If we are to accept the defendant's version of this course of business, then we must say that this money was stolen by the plaintiff, and that the defendant, with full knowledge of these peculations, continued in his employ the dishonest employee, did nothing beyond remonstrating with him against his practice, except upon two occasions when he raised his wages. Surely he must have been an especially valuable employee, if we are to accept this version. Such a course of dealing with a dishonest employee is so palpably absurd as to call for the rejection of this view. The claim of the defendant, that he loaned much of the overpayments to the plaintiff, seems to us to be a lame claim. In this view, as to most of the loans, certainly of a

sum approximating to the overpayment, the loans were forced, that is, the plaintiff appropriated the money and then forced the defendant to consider it a loan. This may not be true as to all, but it certainly is as to much of the overpayment.

Dr. Joslyn testified that the defendant told him, in 1895 or 1896, that he had sold plaintiff an interest in the business, " but that he had kept the business end of it in his own hands." Voight testified that the defendant told him, in 1894, that he had taken the plaintiff in as a partner; " that he was a good man there — attentive to his business; he thought he had earned his share in the business." The plaintiff testified that upon one occasion he took some money from the till, and the defendant demanded it, stating that it was agreed that he should handle the money, and that plaintiff ought not to take it when he was there, but should ask for it; after some words and some time had elapsed, the plaintiff returned the money, and then demanded the receipts for that day, which defendant then handed to him. The defendant states that this money was taken, and says that when he demanded its return plaintiff remarked something to the effect that he " thought I had some rights here, but I don't seem to have any show." The defendant did not deny that subsequently he handed over the day's receipts to the plaintiff, although he denied the statements attributed to him by the witnesses as above noted.

The defendant's version of these transactions, and his acts thereunder, are certainly inconsistent, as we have before observed, with the relation of employer and employee. They do, however, fit in with perfect consistency to the relation of a partnership, in which the details of the business and the control of the cash received were left to one, and the mechanical employment which the business required was left to the other. Such relation harmonizes these acts into a dovetail with the statement which the witnesses heretofore quoted say the defendant made to them, and it is also consistent with an insistance that the money should be received by the defendant, and only delivered to plaintiff upon his request.

Another item of proof is found in the statement of receipts made up by the plaintiff between April 6 and June 4, 1894, inclusive. After deducting from the amount received the expenses and the sums received by the plaintiff and the defendant, there remained a balance of $150.94. Plaintiff testified that the defendant then set

down this last sum and divided it by two. This is denied by the defendant. It is evident from an inspection of this paper that the division is made in a different hand from the body of the figures on the paper. It is not disputed that the body is in the hand of the plaintiff. Upon the trial the defendant, at the request of the court, set down these figures and made this division. A comparison between these figures and the division upon this paper shows a striking resemblance. We do not say they were made by the same hand, but they may well have been. Upon a new trial this subject may be investigated by those competent to speak.

Finally, we come to the proof found in the proposal made by the plaintiff to the defendant when the break between them came, that he should buy him out, stating that he would sell for $2,000. Plaintiff testifies that the defendant replied he " could not buy until he looked over his affairs, and that he would want a few days. I told him I would give him three days." Mr. Bidwell, the defendant's witness, testified that defendant said " he had no money to buy any interest." The defendant denied this testimony, claiming that he said in answer to the proposition : " I told him he had nothing to sell. He said, ' You had better consider that.' I said, ' I have nothing to consider.' He said, ' I will give you just three days to consider that.' " If the statement claimed by the defendant is the true version, it would be quite consistent with the conclusion reached by the court. But as such statement rests upon the defendant's testimony alone, contradicted in substantial particulars by his own witness and by the plaintiff, the clear preponderance would seem to be upon the side of the plaintiff, inasmuch as the defendant admits substantially all of the transactions as given by the plaintiff, only contradicting him in the reply which he claims to have made.

Isolated transactions, testimony and acts like the last, would not suffice to set aside this decision ; but where a long series of acts, accompanied by undisputed testimony, tends to support a given claim, rendering the whole consistent and harmonious, and opposed thereto is a theory which renders inharmonious and inconsistent such testimony and acts of the parties making the claim, it may fairly be said that a conclusion in support of the inharmonious theory is against the weight of evidence and the preponderance of the proof, to such an extent as to lead the mind, with reasonable certainty, to

a conclusion that the determination as made is erroneous, and calls for a reversal. (*Foster* v. *Bookwalter*, 152 N. Y. 166.) Such a case the foregoing discussion tends with reasonable certainty to show. In this discussion we have not overlooked the defendant's claim or his proof, if we have not adverted thereto as fully as we have to the case made by the plaintiff.

It is quite true that while the business was conducted generally under the name of the "Albany Dental Parlors," and the defendant's name was the only one used in connection with the business as constituting the head, and that all bills were made out in his name, all expenses paid by him, and the business, in this branch of it, solely conducted by him, yet this in no wise affects the consistency of the plaintiff's claim. On the contrary, it is quite in harmony with the plaintiff's theory. It was a branch of the business which constituted, to use the expression which Dr. Joslyn put into the mouth of the defendant, keeping "the business end of it in his own hands." All of this testimony tends to establish a division of labor which left the mechanical part with the plaintiff and the business part with the defendant. Indeed, this was a prudent course for the defendant, as the plaintiff was working out his interest, and until that was accomplished the defendant's interest in the property was more or less entire, dependent upon the amount paid in by the plaintiff as a result of his labor. But this is far from being inconsistent with the agreement which the evidence tended with great force to support. There was no answer whatever to the inconsistency in allowing the plaintiff to deal with the funds as he did if a mere employee. The answer suggested in the brief of counsel and urged upon the hearing, was that the defendant was sued for damages and needed the plaintiff as a witness, and, therefore, feared to offend him. When he testified to this he referred to peculations prior thereto, for upon his cross-examination he stated : "At the time I testified to, when he took some money from the drawer, I don't know that suit was pending then that was spoken of by me in my direct examination. The papers were served in 1894 ; the spring of 1894." Such suit could hardly have influenced his mind if it had no existence. He made no such claim thereafter, and if he had we should not think it sufficient to overcome the proof to which we have already adverted.

There were some inconsistencies in plaintiff's testimony and his

acts, notably that of seeking employment in New York. But measuring the whole proof we do not think it shakes the main body of the case, which, as we have said, rests mainly upon undisputed proof.

The discussion has already been prolonged beyond reasonable bounds. We conclude from the whole case that the judgment should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.