SOLOMONS v. RUPPERT et al.

(Supreme Court, Appellate Division, Second Department.  November 22, 1898.)

1. PARTNERSHIP—ACCOUNTING—PLEADING AND PROOF.
Where plaintiff sues for an accounting of partnership property, and proves that part of the property belongs to him and defendant jointly, he may have an accounting in relation thereto, notwithstanding he fails to establish the partnership.

2. SAME—EVIDENCE—SUFFICIENCY.
Plaintiff entered defendant's employment in 1892, at $20 per week, with the expectation of forming a partnership in defendant's dental business. In 1893, defendant agreed to give him a half interest on January 1, 1894, for $5,000, payable in monthly installments from plaintiff's share of the business; and on that date defendant agreed, according to plaintiff, that the partnership should continue therefrom without articles until he had time to prepare them.  Defendant presented articles of partnership in April, taking effect from January 2, 1894, substantially embodying the agreement outlined by plaintiff, but reserving title to the partnership property until the interest was paid for, when defendant was to execute a bill of sale and take plaintiff into partnership.  Plaintiff said the articles did not contain the whole agreement, and testified that defendant then said they could go along and divide proceeds as they had been doing. Defendant denied this, and testified that he said, if the articles were not signed, there would be no agreement.  However, the business was continued, and in May, 1895, the parties leased a building for the business for 10 years.  Defendant denied plaintiff's interest therein, and said plaintiff executed the lease to secure living rooms for himself and family. Plaintiff denied this, and it was proved that no such arrangement was carried out.  The books of the business showed that plaintiff drew in three years, from January, 1894, $961.45 in excess of $50 per week, while theretofore he had never meddled with the receipts.  According to defendant, he protested, and considered the money taken to be a loan; but he continued to employ plaintiff, and it was undisputed that defendant on one occasion, on plaintiff's demand, turned over the day's receipts. A witness for plaintiff stated that defendant told him in 1895 or 1896 that he had sold plaintiff an interest, but that he had kept the business end of it in his own hands; and another testified that defendant told him in 1894 that he had taken plaintiff as a partner.  Plaintiff testified that, when the break between them came, defendant replied to his offer to sell that he could not buy until he looked over his affairs.  A witness for defendant testified that defendant said he had no money to buy any interest.  Defendant denied this, claiming that he said that plaintiff had nothing to sell.  *Held*, that a finding against the existence of a partnership beginning in January, 1894, was against the weight of evidence.

Appeal from special term, Kings county.

Action by Joseph R. Solomons against Louis L. Ruppert and Ellen L. Ruppert.  From a judgment for defendants, plaintiff appeals.  Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George W. Wingate, for appellant.
George D. Beattys, for respondents.

HATCH, J.  This action was brought to procure the dissolution of a co-partnership, and for an accounting.  The issue raised by the pleadings, and litigated upon the trial, was the existence of the co-partnership.  Upon this issue the court found that some of the testi-

mony indicated the existence of a co-partnership, and that the defendant Louis L. Ruppert promised to take the plaintiff into partnership with him, and at times acted as though such partnership was actually consummated, but that the weight of testimony was against its existence, and therefore the complaint was dismissed. We are brought to the conclusion that such finding is against the weight of the testimony, when the undisputed facts are considered in connection with the other testimony and the acts of the parties in connection therewith. It is quite evident that when the plaintiff left his position in New Jersey, and entered the employ of the defendant, it was with the expectation of ultimately forming a partnership in the business then carried on by the defendant in Brooklyn. That this was then in the minds of both parties is fairly to be gathered from the testimony, and is supported by the finding of the court. The version of the plaintiff is that he entered the employ of the defendant in May, 1892, at a salary of $20 a week, which was subsequently raised to $25 a week. In August, 1893, he demanded that the defendant should comply with his promise and admit him to partnership. In October of the same year, he renewed his demand that he should have a half interest, and the defendant replied, "All right, you shall have it on the 1st of January." The terms of this agreement were that plaintiff should pay for such half interest $5,000, in monthly installments, to be deducted from plaintiff's half of the proceeds of the business. No written articles of co-partnership were then prepared; and, on January 1st, plaintiff asked defendant if he had had the articles prepared. Defendant replied that he had not, as he had not had time, but that the partnership could continue from that time, and he would have the articles prepared. In April, 1894, the defendant presented to the plaintiff written articles of co-partnership, which the plaintiff refused to sign, claiming they did not embody the whole agreement. Upon this point the plaintiff testified that he would not sign, and wanted to consult a lawyer. The defendant replied that he did not see the necessity for this course, "and we should go right along and do the business the way we had been doing"; that was, to divide the proceeds. The defendant denied making this statement, and testified that he said: "If you don't sign these papers, you will never sign any other. There will be no agreement made. What is good enough for me is good enough for you." He further testified that this ended the negotiation for a partnership; that none had been before agreed upon, and none was thereafter consummated. By the terms of the agreement proposed by the defendant, the plaintiff was to have one-half of the dental property mentioned therein for 2 years and 3 months from the 2d day of January, 1894, for the sum of $5,000, payable in 27 payments, secured by notes, 6 of which should be for $150 each, with interest at 6 per cent., payable in 2, 3, 4, 5, and 6 months from date, and 21 notes for $250 each, with interest, payable monthly, distributed over 27 months; the whole period covering both sets of notes, and equaling that of the lease. At the expiration of this time, the property was to be transferred to the plaintiff by bill of sale. The title to the property was to remain in the defendant during the term of the lease. Upon the expiration of

this period and the execution of the bill of sale, the defendant would take the plaintiff into partnership. In the meantime the plaintiff was to have one-half of the earnings of the business, but no control of it until the partnership was formed. It is apparent from the testimony of the plaintiff and this agreement that the arrangement contemplated the payment of $5,000 for plaintiff's share in the business; that this sum was to be obtained from the proceeds of the business; and that the same was to begin with the beginning of January, 1894, —for, while the agreement was not prepared until April of 1894,. by its terms it was to take effect upon the 2d day of January, 1894. As the preparation of the agreement was the act of the defendant, it must, we think, be conclusively presumed that the date at which the arrangement was to go into effect was as early as the date mentioned therein, which corresponds with the plaintiff's version in this respect.

The real issue presented for solution was, did the parties agree to become partners on this date? The terms, as then understood by both parties, were practically conclusive upon these points, i. e.: The amount of the sum to be paid, the time of payment, and the source from which the money was to be obtained with which to pay. The point in dispute is, did the defendant waive the provision of lease of the property, and consent to an immediate partnership beginning in January? It is well settled that a writing is not essential to the validity of an agreement of co-partnership, and it may be established by any competent proof. Col. Partn. § 3; 2 Greenl. Ev. § 481. The question presented is to be largely determined upon proper construction of the acts of the parties thereafter, and upon undisputed, or at least undisputable, testimony. At the time when the negotiations were had, the business was being conducted at 210 South Eighth street. On May 1, 1895, it was moved to 208 of the same street, on the corner, and a lease taken of the whole building, under date of March 14, 1895. This lease was executed by both the plaintiff and defendant as their joint act; each furnished a surety for its fulfillment, and each engaged to pay the rent and keep the property in repair. The term was 10 years from the 1st day of May, 1895, and the lease contained a clause whereby the lessor agreed not to rent the premises 210 South Eighth street for the business of dentistry. The whole of the provision of the lease shows that the parties thereto took these premises jointly, and for the benefit of the business in which they were engaged, stipulating against possible competition so far as the lessor should control the same. By this instrument, the plaintiff obtained a right which was clearly a property interest in connection with the business carried on in the structure rented, and under it is entitled to have his property right protected. Of this right he cannot be devested any more than the defendant can be of his interest.

The complaint avers that the plaintiff is possessed of this leasehold interest in partnership with the defendant, and that it is a valuable property right. It further avers that the defendant has assigned, without the consent of the plaintiff, all of the property connected with this business. While the answers of the defendants deny any interest in the plaintiff, yet the leasehold interest in the plaintiff is established by the undisputed testimony; and as to this interest, at

least, the plaintiff is, as against both defendants, entitled to an ac-
counting; and a sale of the same, even though he be held to have failed
in establishing a general interest as a partner in the whole business.
The averments of the complaint were sufficient to raise this question;
the prayer for relief was broad enough to cover it; and, under the
general equitable power of the court, a proper subject was presented
for its cognizance.　It should have laid hold of this, and granted such
relief as was proper, even though it went no further.　But, aside
from this consideration, we think that the lease, in connection with
the other proof, is practically conclusive upon the question of a part-
nership interest in the plaintiff in this business.　It is so incredible
as to pass belief that the plaintiff should engage himself in a lease,
having no other object than the prosecution of this business, for a
period of 10 years, thereby incurring a liability of $9,600, if he had
no interest therein.　If he was a mere employé, then we must con-
sider his act as a pure gratuity.　In this aspect his generosity passes
the bounds of credulity.　His engagement was only from week to
week.　He might be discharged at the expiration of any week, and
thereby cease to have any interest in or connection with the business,
and yet be incumbered with the load of this lease.

The explanation of the defendant, that the plaintiff executed the
lease in order to secure living rooms for himself and family, is not
satisfactory.　There is no such provision in the lease, nor any sug-
gestion therein, of any such right reserved to the plaintiff.　If called
upon to make proof, he could not contradict the lease; and, if he had
no interest in the whole, he had none in a part.　He denies that any
such arrangement was made, and, if it was, it is conceded that it was
never carried out.　On the contrary, the defendant occupied the
rooms which it is claimed were reserved for the plaintiff; and under
this claim the plaintiff not only received no benefit, but only a con-
tinuing burden, against which the defendant in no wise secures him,
and, while conceding his liability, denies him any interest or security.
If it be considered that this lease was executed in pursuance of an
agreement of partnership, then it is consistent with the plaintiff's
version of such agreement, and with the act of the defendant in exe-
cuting the same jointly with the plaintiff, and in securing exclusive
right for the prosecution of the dental business in that locality.

It also appears by the proof that after January 1, 1894, the plaintiff
changed radically his course of conduct in connection with this busi-
ness.　No claim is made that prior to this time he in any manner
interfered with the receipts when the defendant was at the office.
Afterwards this was of common occurrence, and was the occasion of
some difficulty.　The books, however, show that the plaintiff, while
drawing generally about $50 a week, frequently drew more, and, in
the aggregate, considerable amounts above this sum.　At $50 a week,
it amounted to $2,600 yearly.　Yet in 1894 plaintiff drew $2,914.06,—
an excess of $314.06.　In 1895 he drew $3,030.39,—an excess of
$430.39.　In 1896 he drew $2,817,—an excess of $217.　Thus, for
these three years the excess above a salary of $50 a week was $961.45.
This was done to the knowledge of the defendant.　The items ap-
peared upon the books, and the defendant protested against this

course.    The defendant also testified that the plaintiff did not assert any right to retain this money as a partner; that he asked for an accounting and return of this money; that he did not get it back, or any part of it; and that he still continued him in his employ.    If we are to accept the defendant's version of this course of business, then we must say that this money was stolen by the plaintiff, and that the defendant, with full knowledge of these peculations, continued in his employ the dishonest employé; did nothing beyond remonstrating with him against his practice, except upon two occasions, when he raised his wages.    Surely, he must have been an especially valuable employé, if we are to accept this version.    Such a course of dealing with a dishonest employé is so palpably absurd as to call for the rejection of this view.    The claim of the defendant that he loaned much of the overpayments to the plaintiff seems to us to be a lame claim.    In this view, as to most of the loans,—certainly of a sum approximating to the overpayment,—the loans were forced; that is, the plaintiff appropriated the money, and then forced the defendant to consider it a loan.    This may not be true as to all, but it certainly is as to much, of the overpayment.

Dr. Joslyn testified that the defendant told him, in 1895 or 1896, that he had sold plaintiff an interest in the business, "but that he had kept the business end of it in his own hands."    Voight testified that the defendant told him, in 1894, that he had taken the plaintiff in as a partner; "that he was a good man there,—attentive to his business; he thought he had earned his share in the business."    The plaintiff testified that upon one occasion he took some money from the till, and the defendant demanded it, stating that it was agreed that he should handle the money, and that plaintiff ought not to take it when he was there, but should ask for it.    After some words and some time had elapsed, the plaintiff returned the money, and then demanded the receipts for that day, which defendant then handed to him.    The defendant states that this money was taken, and says that, when he demanded its return, plaintiff remarked something to the effect that he "thought I had some rights here, but I don't seem to have any show."    The defendant did not deny that subsequently he handed over the day's receipts to the plaintiff, although he denied the statements attributed to him by the witnesses as above noted.    The defendant's version of these transactions, and his acts thereunder, are certainly inconsistent, as we have before observed, with the relation of employer and employé.    They do, however, fit in with perfect consistency to the relation of a partnership, in which the details of the business and the control of the cash received were left to one, and the mechanical employment which the business required was left to the other.    Such relation harmonizes these acts into a dovetail with the statement which the witnesses heretofore quoted say the defendant made to them; and it is also consistent with an insistence that the money should be received by the defendant, and only delivered to plaintiff upon his request.

Another item of proof is found in the statement or receipts made up by the plaintiff between April 6 and June 4, 1894, inclusive.    After deducting from the amount received the expenses and the sums re-

ceived by the plaintiff and the defendant, there remained a balance of $150.94. Plaintiff testified that the defendant then set down this last sum, and divided it by two. This is denied by the defendant. It is evident from an inspection of this paper that the division is made in a different hand from the body of the figures on the paper. It is not disputed that the body is in the hand of the plaintiff. Upon the trial, the defendant, at the request of the court, set down these figures, and made this division. A comparison between these figures and the division upon this paper shows a striking resemblance. We do not say they were made by the same hand, but they may well have been. Upon a new trial this subject may be investigated by those competent to speak.

Finally, we come to the proof found in the proposal made by the plaintiff to the defendant, when the break between them came, that he should buy him out, stating that he would sell for $2,000. Plaintiff testifies that the defendant replied he "could not buy until he looked over his affairs, and that he would want a few days. I told him I would give him three days." Mr. Bidwell, the defendant's witness, testified that defendant said "he had no money to buy any interest." The defendant denied this testimony, claiming that he said in answer to the proposition: "I told him he had nothing to sell. He said, 'You had better consider that.' I said, 'I have nothing to consider.' He said, 'I will give you just three days to consider that.'" If the statement claimed by the defendant is the true version, it would be quite consistent with the conclusion reached by the court. But as such statement rests upon the defendant's testimony alone, contradicted in substantial particulars by his own witness and by the plaintiff, the clear preponderance would seem to be upon the side of the plaintiff, inasmuch as the defendant admits substantially all of the transaction as given by the plaintiff, only contradicting him in the reply which he claims to have made.

Isolated transactions, testimony, and acts like the last would not suffice to set aside this decision; but where a long series of acts, accompanied by undisputed testimony, tends to support a given claim, rendering the whole consistent and harmonious, and opposed thereto is a theory which renders inharmonious and inconsistent such testimony and acts of the parties making the claim, it may fairly be said that a conclusion in support of the inharmonious theory is against the weight of evidence and the preponderance of the proof, to such an extent as to lead the mind, with reasonable certainty, to a conclusion that the determination as made is erroneous, and calls for a reversal. Foster v. Bookwalter, 152 N. Y. 166, 46 N. E. 299. Such a case the foregoing discussion tends with reasonable certainty to show. In this discussion we have not overlooked the defendant's claim or his proof, if we have not adverted thereto as fully as we have to the case made by the plaintiff.

It is quite true that while the business was conducted generally under the name of the "Albany Dental Parlors," and the defendant's name was the only one used in connection with the business as constituting the head, and that all bills were made out in his name, all expenses paid by him, and the business, in this branch of it, solely

conducted by him, yet this in no wise affects the consistency of the plaintiff's claim. On the contrary, it is quite in harmony with the plaintiff's theory. It was a branch of the business which constituted, to use the expression which Dr. Joslyn put into the mouth of the defendant, keeping "the business end of it in his own hands." All of this testimony tends to establish a division of labor which left the mechanical part with the plaintiff, and the business part with the defendant. Indeed, this was a prudent course for the defendant, as the plaintiff was working out his interest; and, until that was accomplished, the defendant's interest in the property was more or less entire, dependent upon the amount paid in by the plaintiff as a result of his labor. But this is far from being inconsistent with the agreement which the evidence tended with great force to support. There was no answer whatever to the inconsistency in allowing the plaintiff to deal with the funds as he did, if a mere employé. The answer suggested in the brief of counsel, and urged upon the hearing, was that the defendant was sued for damages, and needed the plaintiff as a witness, and therefore feared to offend him. When he testified to this, he referred to peculations prior thereto, for upon his cross-examination he stated: "At the time I testified to, when he took some money from the drawer, I don't know that suit was pending then that was spoken of by me in my direct examination. The papers were served in 1894,—the spring of 1894." Such suit could hardly have influenced his mind if it had no existence. He made no such claim thereafter, and, if he had, we should not think it sufficient to overcome the proof to which we have already adverted. There were some inconsistencies in plaintiff's testimony and his acts, notably that of seeking employment in New York. But, measuring the whole proof, we do not think it shakes the main body of the case, which, as we have said, rests mainly upon undisputed proof.

The discussion has already been prolonged beyond reasonable bounds. We conclude from the whole case that the judgment should be reversed, and a new trial granted; costs to abide the event. All concur.