HINMAN v. DEVLIN.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

POWER OF ATTORNEY—FRAUDULENT EXERCISE.

    A conveyance of his principal's real property by an attorney in fact to himself, in hostility to the purpose of his power, though within its letter, and though effected by nominal conveyances to a third party and back to the attorney, is absolutely voidable by the principal.

Appeal from special term, Kings county.

Action by Mary E. Hinman against John Devlin. From a judgment for plaintiff, setting aside certain deeds purporting to have been made by defendant, as attorney in fact of plaintiff, to his son and to a brother, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Horace Graves, for appellant.

Edward M. Grout (Almet F. Jenks, on brief), for respondent.

WOODWARD, J. A careful examination of this case discloses very little of merit in the appeal, and no reason why this court should reverse the judgment of the court below. It appears from the evidence that the defendant, John Devlin, is a man past 60 years of age, in feeble health, and has no wife living. He has two children,—the plaintiff in this action, and George W. Devlin, both of

whom are married, and have children of their own. Some years ago he began making advancements to his children, giving them certain parcels of real estate, the conveyances being made absolute in form; and these were supplemented by deposits in bank in the names of his children, or in trust for them. On the 27th of May, 1895, George and Mary executed deeds, inter sese, by which each became vested with a half interest in the land previously given to the other by the father; these deeds being absolute in form. On the 15th day of April, prior to this interchange of deeds, the plaintiff in this action, for the purpose of allowing the defendant, her father, to manage the property which he had given her, and to make use of such of the avails as should be necessary for his own comfort, pleasure, or convenience, executed a power of attorney to the defendant, authorizing him to make such use of the property—to sell, transfer, etc. —as should seem to him proper; and a similar power was made and executed by George W. Devlin and his wife. On Saturday, the 1st day of June, 1895, following the equalization of the property between George and Mary, a dispute arose between them, in which the brother threw a glass at his sister; and on the following day the plaintiff in this action, with her family, left the house at Ravenswood. This was on Sunday, and on the following day the plaintiff retained counsel, and executed a revocation of any and all powers of attorney ever made by her, which was on the same day filed for record; and the Hamilton Trust Company, which was the custodian of the funds on deposit, was notified of such revocation. Some time after the execution of the power of attorney,—but whether before or after the 1st day of June, 1895, the trial court refuses to find,—the defendant executed a deed of conveyance, for a nominal consideration, to George W. Devlin, of the property of this plaintiff; and in December, 1896, the said George W. Devlin executed a conveyance to the defendant of the same property. This action was brought to set aside these conveyances, and the trial court,—after having the witnesses before the justice holding the trial term,—in giving judgment, says:

"It is not necessary to decide whether the conveyances made by the defendant were made before or after the fact of the revocation of the power became known to him. He made use of his power to convey to himself, without consideration, the property of his principal, and now claims it as his own, denying his duty to account to her for its value. The exercise of the power was a fraud upon the rights of the plaintiff. The conveyances by which the defendant claims title to the premises belonging to the plaintiff are fraudulent, null, and void; and the plaintiff is entitled to judgment setting them aside, with the costs of this action."

The defendant having signally failed to establish the contention introduced in his amended answer, that the conveyances to the plaintiff, though absolute in form, were really intended as mortgages to secure the plaintiff against loss in becoming surety for the defendant, there is no other conclusion to which the trial court could arrive, without doing violence to a rule as old as the principle of equity itself. In the case of Davoue v. Fanning, 2 Johns. 251, Chancellor Kent fully developed the principle that a trustee could not purchase property of his cestui que trust for his own benefit; citing authorities

reaching back to the early days of the eighteenth century. In the carefully considered case of Hawley v. Cramer, 4 Cow. 717, cited with approval by Chancellor Walworth in the case of Van Epps v. Van Epps, 9 Paige, 237, we are told that:

"By the Roman law, guardians were prohibited from purchasing the property of their wards; agents and attorneys, the property intrusted to their care or management; and, generally, all persons having a trust or charge were disabled from purchasing the property which was the object of such trust. And the disability was extended to their children, and other persons under their control."

The same authority tells us that

"In the case of the Petition of Frances James in Bankruptcy, 8 Ves. 352, Lord Eldon set aside a purchase made by a solicitor who had been employed by the assignees in the business of the estate, although the sale was perfectly fair, and the purchase sanctioned by most of the persons interested in the estate; the amount bid being, at the time of sale, considered the full value of the premises. He observes: 'This doctrine as to purchases by trustees, assignees, and persons having a confidential character stands much more upon general principles than upon the circumstances of any individual case. It rests upon this: That the purchase is not permitted in any case, however honest the circumstances; the general interest of justice requiring it to be destroyed in every instance, as no court is equal to the examination and ascertainment of the truth in much the greatest number of cases.' "

"In all such cases," say the court in the case of Hawley v. Cramer, supra, "the rule appears now to be fully settled that the purchase, however fair and honest it may have been, must be set aside on the application of any of the parties in interest; provided, such application be made within a reasonable time after the sale, which is to be judged of by the court under all the circumstances of the case. And the fact that the purchase was made by the trustee through the intervention of a third person, or that the trustee purchased as agent for another, makes no difference in the legal effect of the transaction, or in the application of the general rule. A person who is incapacitated from purchasing on his own account cannot in any case, or under any circumstances, buy as the agent of a third person."

"The rule of equity which prohibits purchases by parties placed in a situation of trust or confidence with reference to the subject of purchase," say the court in the case of Van Epps v. Van Epps, 9 Paige, at page 241, "is not, as the defendant supposes, confined to trustees or others who hold the legal title to the property to be sold; nor is it confined to a particular class of persons, such as guardians, trustees, or solicitors. But it is a rule which applies universally to all who come within its principle, which principle is that no party can be permitted to purchase an interest in property, and hold it for his own benefit, where he has a duty to perform in relation to such property which is inconsistent with the character of a purchase on his own account and for his individual use."

In the case at bar the pretended sale was made to the son of the defendant, who was familiar with all the facts in the case, and who was charged with knowing the relations existing between the defendant and the plaintiff in this action, and purchasing with notice of the fact that the sale was made for the purpose of devesting his

sister of the title to property which rightfully belonged to her, he could get no better title than the defendant, acting as attorney in fact, could have given to himself. The subsequent transfer from the son to the father, instead of strengthening the title, served to weaken it, by showing the real intent of the parties, and indicating clearly that the transfer was merely nominal, and that the real purchaser was the defendant in this action. "Another class of constructive frauds," says Story, Eq. Jur. § 395, "consists of those where a person purchases with full notice of the legal or equitable title of other persons to the same property. In such cases he will not be permitted to protect himself against such claims, but his own title will be postponed, and made subservient to theirs. It would be gross injustice to allow him to defeat the just rights of others by his own iniquitous bargain. He becomes by such conduct particeps criminis with the fraudulent grantor; and the rule of equity, as well as of law, is, 'Dolus et fraus nemini patrocinari debent.' And, in all such cases of purchase with notice, courts of equity will hold the purchaser a trustee for the benefit of the persons whose rights he has thus sought to defraud or defeat." The case at bar comes fully within this rule, and the trial court, in directing that the transfers, in so far as they affect the plaintiff in this action, shall be set aside, has but discharged its duty under the law. The power of attorney under which the defendant pretends to have acted, broad and general as were its terms, did not invest him with the authority to dispose of the property of the plaintiff for his own benefit, or for the benefit of third persons,—certainly not without some compensation to the client, this plaintiff. The authority to sell and dispose of the property was a delegation of a power to be used as the plaintiff herself might use it under similar circumstances, and it is not reasonable to suppose that the plaintiff, after quarreling with her brother, who had ordered her from the home of her father and thrown a glass at her, would transfer upwards of $50,000 worth of property to him without consideration, as was attempted by the defendant; and a court of equity is clearly within its province in declaring such an abuse of trust fraudulent, and in setting aside the transfers, and restoring the property to its rightful owner. In the recent case of Williams v. Paine, 169 U. S. 55, 18 Sup. Ct. 279, where the question arose as to the validity of a transfer of real estate under a joint power of attorney executed by husband and wife, the court say: "And, lastly, that the contract of sale was within the scope of the power of attorney, and vested in the purchaser an equitable interest or estate, which, upon general equitable principles, a court of equity would not devest out of the vendee, in the absence of fraud; and no fraud being alleged or shown, and the purchase money having been received by Mrs. Ransom, equity would not set aside the sale,"—thus clearly indicating that the rule would be otherwise had the money not been paid to the person or persons executing the power. It is true, of course, that the plaintiff came into possession of this property through a gift or advancement from the defendant, and, if he were in need or distress, she would owe him great obligations; but it is conceded that the defendant, an old man, has retained for his own

use and benefit something like $50,000, and the entire proceeding seems to have been undertaken for no other purpose than to deprive this plaintiff of her share of the property advanced by the father, for the benefit of the son, who has been intimately identified with the various transactions, and appears to have the defendant largely under his control. We are entirely clear, then, not only that the trial court has acted within the rules of equity and law, but that substantial justice will be done by affirming the judgment.

The judgment is affirmed, with costs. All concur.