DEVLIN v. HINMAN.

(Supreme Court, Appellate Division, Second Department. November 22, 1898.)

GIFTS—DEPOSITS IN TRUST—INTENTION.

Plaintiff deposited his own money in his name in trust for his son and daughter, who gave him powers of attorney to control the account. The daughter indorsed blank checks at request of plaintiff, who used the account without reference to, or consultation with, either of his children. All checks were drawn by plaintiff, even for the personal expenses of the daughter, and the pass book remained in his possession. Difficulties arising between the father and daughter, the latter revoked the power of attorney, and gave notice to the trust company of the revocation, but concealed the fact from plaintiff, who continued to deposit money and draw checks as before. Plaintiff testified that his daughter asked him to make the deposit in the name of herself and brother, and that he consented on condition that powers of attorney be given, at the same time telling her that he should own the account. The daughter testified that plaintiff told her at the time of the deposit that half of it was an absolute gift to her. *Held* that, as between father and daughter, a decision for the latter for half of the deposit on hand will be reversed, since his acts, and also hers, fully support plaintiff's contention that there was no absolute gift.

Appeal from special term, Kings county.

Action by John Devlin against Mary E. Hinman and the Hamilton Trust Company to recover part of a deposit made by plaintiff as trustee for defendant Hinman. The company was dismissed as a party defendant. From a judgment entered on a decision for defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Horace Graves, for appellant.
Edward M. Grout, for respondent.

GOODRICH, P. J. The action was originally instituted against the Hamilton Trust Company and Mary E. Hinman. The complaint alleged that in March, 1895, the plaintiff entered into an agreement with his children, George W. Devlin and the defendant Mary E. Hinman, by which it was agreed that, if the plaintiff deposited with the Hamilton Trust Company the sum of $60,000 or other moneys, to the joint credit of said George and Mary, they would each execute a power of attorney to the plaintiff, by which he would be able to draw such moneys from the trust company and use the same as he deemed best; that on April 15th the powers of attorney were executed by George and Mary; that the plaintiff, from March 26th to May 6th, deposited with the trust company $66,701.25, and handed the

powers of attorney to the trust company; that on the 3d or 11th of June the defendant Mrs. Hinman notified the trust company that she had revoked the power of attorney, but that no notice of such revocation was given to the plaintiff, and that, in ignorance of such fact, he deposited other sums of money with the trust company; that on November 19th the plaintiff withdrew the sum of $96,978.99, and redeposited the same with the company, in his own name; and that the trust company refused to permit the plaintiff to withdraw the sum of $48,261.73, being one-half of the deposit, for which sum the plaintiff demanded judgment. The Hamilton Trust Company answered, admitting the deposit of $66,721.25, and subsequently the court directed the trust company to pay into court, to the credit of this action, the sum of $48,261.73, with interest, and the trust company was dismissed from the action. The answer of the defendant Mrs. Hinman alleged that the money in question was on deposit with the trust company, in the name of the plaintiff, in trust for her and her brother George, and was her property, and that it was deposited under a power of attorney executed by her to the plaintiff, which she afterwards revoked. The plaintiff's contention is that the account was opened by him for his own benefit, that he was the sole owner of the account and the moneys deposited, and that he never gave the money to the defendant; while the defendant claims that the transactions constituted an absolute gift to her from her father. The plaintiff and defendant were examined as witnesses at the special term, and it is chiefly upon their testimony that the question must be decided.

The court found that on April 6, 1893, the plaintiff deposited $100,000 with the People's Trust Company, in the name of John Devlin, in trust for Mary Hinman and George W. Devlin; that thereafter the plaintiff showed the pass book to the defendant, "and then and there stated to her that the account had been opened for her and for her brother"; that on March 6, 1895, the plaintiff opened an account with the Hamilton Trust Company, in the name of Mary and George, in which, prior to May 6, 1895, was deposited nearly $6,000; that on that day there was deposited in this account $60,000, which was withdrawn from the account in the name of George, previously deposited in the People's Trust Company, in a former account therein, in the name of John Devlin, in trust for Mary and George; and that thereafter, and down to November 19, 1895, the plaintiff made other deposits with the Hamilton Trust Company, which, with interest, brought the account up to $96,978.93, of which the plaintiff gave one-half to the defendant Mrs. Hinman, "by way of advancement." As conclusion of law, the court found that the sum named belonged to the defendant Mrs. Hinman, and directed the payment of the money to her. From the judgment entered upon this decision, the plaintiff appeals.

Enough has been said to indicate that this appeal must turn upon the question whether the transactions mentioned constituted a gift from the plaintiff to his daughter. This court has stated the view which it entertains of the law applicable to deposits, similar to that in the present action, in Decker v. Savings Inst., 15 App. Div. 553, 44 N. Y. Supp. 521, where a depositor opened an account in these words: "William F. Du Bois, Trustee for Ellenora H. Decker." Mr.

Justice Hatch, speaking for the court, said (15 App. Div. 554, 44 N. Y. Supp. 522):

"The language used by the depositor in making the deposit in the present case is in all respects similar to the language used in Martin v. Funk, 75 N. Y. 134. It constitutes an unequivocal declaration of trust in favor of the beneficiary. But, while this is true, it by no means follows that the legal title to the fund passes to the beneficiary, or that the depositor of the fund has devested himself of title. The declaration is simply evidence of an intent to create a trust in favor of the beneficiary named, and may or may not be conclusive of such fact. Beaver v. Beaver, 117 N. Y. 430, 22 N. E. 940. * * * If the trust be once established, it is irrevocable, in the absence of any reservation of power of revocation. Mabie v. Bailey, 95 N. Y. 206."

An appellate court is always reluctant to differ with the findings of the court at special term upon matters of fact. We recognize the fact that the special term has better facilities for deciding questions of fact, the decision of which must in some measure depend upon the appearance of witnesses and the manner in which their testimony was given. But when it appears that the decision of the trial court is against the weight of the evidence, or that the proof so clearly preponderates in favor of a contrary result that it can be said with reasonable certainty that the trial court erred in its conclusions, the judgment should be reversed (Foster v. Bookwalter, 152 N. Y. 166, 46 N. E. 299); and in the present case we cannot resist the conclusion that the testimony of the defendant herself, and the documentary evidence, about which there can be no dispute, evince in a strong manner that the plaintiff never intended to, and did not in fact, make an absolute gift to the defendant of the deposit in question. The plaintiff, for many years, had been a contractor doing work for the city of Brooklyn, and had amassed a considerable sum of money. On April 6, 1893, he drew his check on the First National Bank of Brooklyn, to his own order, for $100,000, and indorsed it, "Pay to People's Trust Co. John Devlin." It was deposited in the People's Trust Company in an account headed, "John Devlin, Trustee, for Mary E. Hinman and George W. Devlin." After the time of such deposit, commencing with August 11, 1893, down to January 31, 1894, the plaintiff drew nearly 100 checks upon the account, in large and small sums. On November 21, 1893, the account was balanced on the books of the People's Trust Company, the balance, $46,052.23, being brought forward to an account with a similar heading, in another ledger. On October 18, 1894, there appears a deposit of $60,000 in this account. The plaintiff continued to draw checks, more than 30 in number, down to September 25, 1894, when the account was again balanced, such balance to the credit of the plaintiff being $94,897.46. This balance being carried forward to an account with the same heading, other deposits were made, bringing up the total deposit to $105,896.46, and on January 31, 1895, a balance was struck, showing the sum of $850.94 to the credit of the plaintiff. This last account contains a check of John Devlin, trustee, dated January 31, 1895, to the order of George, for $69,000, which was indorsed by George, and deposited in the People's Trust Company, in an account headed with the name of George W. Devlin, to which account various other deposits were added, and against which sundry other checks were drawn by the plaintiff, so

that on April 19, 1897, when the account was balanced, there was standing to the credit of the account $7.31.

It will be observed that in the account of the People's Trust Company with George W. Devlin there appears a deposit of $60,036.25 under date of May 7, 1895. Apparently this was the proceeds of a check dated March 4, 1895, and drawn by said George on the People's Trust Company, to the order of Mary and George, for the sum of $60,000. This check was indorsed with the names of George and Mary, "for deposit account," and was deposited with the Hamilton Trust Company on May 6th. There is a difference between the amount of the check and the deposit, but we assume that it is the same check, the difference probably being interest on the amount of the check. In the same account, under date of January 31st, is a deposit of $69,000, which was the proceeds of a check of that date, signed by John Devlin, trustee, to the order of and indorsed by George, for the sum of $69,000. The record contains transcripts of the accounts with the Hamilton Trust Company. The first was headed, "Hamilton Trust Company, in Account with Mary E. Hinman and George W. Devlin." The first deposit was of $2,100, on March 26, 1895. Several other deposits were made, and on May 6th there was deposited $69,862.50, which was evidently the deposit of the $69,000 check, and perhaps the balance to the credit of Devlin, trustee for George and Mary, in the People's Trust Company, already referred to. This was followed by other deposits, down to July 19th, the total amount being $96,778.93. On November 19th this entire amount was drawn out by a check signed, "John Devlin, Attorney, George W. Devlin, and Mary E. Hinman," to the order of John Devlin, in trust, and indorsed, "Credit account John Devlin, in trust," and was used in the opening of another account with the Hamilton Trust Company, headed, "John Devlin, in Trust for Mary E. Hinman and George W. Devlin." More than 50 checks were drawn against this account, commencing with December 26, 1895, and ending on September 28, 1896, when the account showed a balance to the credit of the account amounting to $48,261.73, which is the sum in litigation. It appeared in evidence that George, on April 13, 1895, and Mrs. Hinman, on April 15th, executed written powers of attorney, which, among other things, gave the plaintiff full power to control the trust company account in question, and to deposit and draw moneys in any bank, and that on June 3, 1895, Mrs. Hinman executed a revocation of her power of attorney, which was communicated to the Hamilton Trust Company on June 11th. Among the checks upon the Hamilton Trust Company were 21 which were given to the order of the defendant for her personal expenses.

I have already said that, while there are other witnesses than the plaintiff and defendant, the decision of this appeal must rest largely upon the credit to be given to the testimony of the plaintiff or defendant, taken in connection with the documentary evidence. It is true that the son and two other witnesses testified in corroboration of the plaintiff, but, as the learned judge at special term does not seem to have credited them, I do not think it necessary to rely upon their testimony, and I rest the decision of the question of fact upon

an examination of the testimony of the plaintiff and the defendant, and proceed to state their evidence upon the main question.

The plaintiff testified that in November, 1894, the defendant asked him to deposit money in the bank in the name of herself and her brother; and that:

"I told her I would put money in the bank in her name and in my son's name, but before doing that they must each give me a power of attorney; and in 1895 I said that no one should control the fund but myself. I told them that I should own it. That was in 1895. This conversation that I had been testifying about took place, part of it, in 1894, and the next was in 1895. I think it was in the early part of 1895, around March or April. She said that she would give me a power of attorney, and that she would be glad if I would deposit the money in her name. It was understood that I should own it; should have a right to take it out, and do what I liked with it. I told her my object in putting it up was for the purpose of giving certified checks when I should take a contract. Contracts for— Municipal contracts and other work. My business was that of a contractor for thirty-five years. I made all the deposits. This is the book of deposits."

. He further testified that he opened an account with the Hamilton Trust Company, and received a pass book, which always remained either in the possession of himself or the trust company, and that all of the moneys deposited in the account came from, and originally belonged to, him.

Mrs. Hinman testified as follows:

"The first time there was any conversation between my father and myself concerning money in the bank was in February, 1892. This was said: He gave me a paper to keep, which had been drawn up. An assignment, I think, the paper reads. The instrument reads that there was money put in my name. He did not tell me, as a matter of fact, that there was an account opened. The first conversation between me and my father as to that account was in 1893. Papa came, and showed me a pass book of the People's Trust Company. That pass book showed— I didn't take it from papa's hands. He opened it. I saw at the top of the account, 'George W. Devlin and Mary E. Hinman, $100,000.' This pass book you showed me, I could not say that is the book which my father showed me. The reading at the top is the same. Q. Is it like or similar? A. Yes, sir. The conversation had between me and my father at that time, he said, 'Half of this is a gift.' That 'half of this is a gift, and is for me to use, and that whenever he needed money he should always have it.' This was in 1893, and the next was in 1894. Before going to the country, papa asked me if I would indorse a blank check, and he said while I was in the country— There was three or four connections between Connecticut and New York,—trains irregular. He asked me if I would indorse a check, so that he could buy stock in case anything—any good opportunity—should present itself on the exchange, and I indorsed the checks,—several checks. I never saw any of those checks again on which I wrote my name in blank. * * * There was nothing said in that conversation about any condition or agreement, or power of attorney, or anything, except to refer to what was to be given me and to George. It was always an absolute gift, I understood. My father, at no time when the conveyances were made, never said anything to me about my going security for him on any contract. He never asked me to sign any bond as security, or issue certified checks; checks to be certified and used in business. * * * It isn't true that there was any stipulation or restriction upon the ownership of the gift of either the land or the money expressed in my conversation between my father and myself. Never to me. There was never a stipulation, as far as papa and I was concerned. The reason why my father gave me, at any of these conversations, why he was putting money in my name, was for love and affection,—a gift to me. That is not my impression of it; he told me. He used those words, 'love and affection,' continuously."

It also appeared that Mrs. Hinman, at the request of her father, signed or indorsed a number of checks in blank, the object of which, she testified, was a "mystery" to her.

From a careful reading of the testimony already quoted, and from the documentary and other evidence in the case, I cannot escape the conclusion that the plaintiff never intended to give the money in question to his children. This conclusion was so clearly required by the evidence that a finding to the contrary was error. The accounts stood in the name of the plaintiff, as trustee for his children. They gave him powers of attorney to control the account, and this he did absolutely. Mrs. Hinman assigned or indorsed checks in blank, as he requested, and the plaintiff used the account without reference to, or consultation with, either of his children. All checks were drawn by him, even for the personal expenses of the defendant. No objection was made to this course of procedure until, owing to differences between the plaintiff and his daughter, Mrs. Hinman revoked her power of attorney; and, while she gave notice of this revocation to the trust company, she concealed this fact from her father, so that, in ignorance of the revocation, he continued to deposit money and draw checks as he had always done. Mrs. Hinman does not deny her signature to the power of attorney, although she denies that she acknowledged it before a notary. I can see no reason for the execution of such a power of attorney by her, if the money was an absolute gift to her, and her story is inconsistent with her contention.

The first account in the People's Trust Company stood in the name of the plaintiff, as trustee for his children. Still the plaintiff, at all times for a year and a half, controlled and used this account, and drew checks upon it, without reference to, or consultation with, his children. This account was practically closed on January 31, 1895, by the check of $69,000 to George's order, which, for some unexplained reason, was used to open a new account in the same company, in the name of the son alone. This account, it will be especially noted, was not in the name of Mrs. Hinman, but in the name of George. It seems to have been used by the plaintiff for general business purposes under George's power of attorney, in just the same way as he had used the previous account, and this continued from February 13, 1895, down to April, 1897. But on March 4, 1895, the check for $60,000 was drawn by George, to the order of Mrs. Hinman and himself, and this is apparently indorsed by both. It was not deposited, however, until May 6th.

Mrs. Hinman testified that she never indorsed any check drawn by George, but, as she admitted that she had, at her father's request, indorsed several blank checks in 1894, it may well be that the check was one of them. On the other hand, the plaintiff testified that Mrs. Hinman did indorse this particular check. I have personally examined the exhibits, and compared what purports to be her signature on the $60,000 check with her admitted signatures on several of the other exhibits, and I am convinced that she is in error as to her indorsement of the $60,000 check, although, as already

stated, it may be one of the checks which she indorsed in blank. Indeed, she testified cautiously when she said: "I don't remember ever indorsing a check like that after it had been filled out. I never indorsed a check drawn by George Devlin." "I never indorsed that when it was filled out." It seems clear that the indorsement was made by her, and it tends strongly to verify the belief that she knew that there was no irrevocable gift of the accounts to her.

To summarize the facts, it is evident that the money originally belonged to the plaintiff, and that he treated the accounts, both in the People's Trust Company and the Hamilton Trust Company, at all times as his own; that he changed them from time to time as he saw fit; that he retained the pass book in his own possession; that he alone controlled the accounts, and drew checks against them; and that Mrs. Hinman received moneys upon the plaintiff's checks, drawn to her own order, and in no instance objected to his control of the accounts until difficulties arose between them, when she revoked her power of attorney, and then only instructed the Hamilton Trust Company that such checks must not be charged to what she claimed to be her half of the account. There is ample evidence for the conclusion that both parties understood that the plaintiff was the owner of the money, and that he never intended to and never did devest himself of the title to the fund, and never made any irrevocable trust thereof. The sole question here, as in Decker v. Savings Inst., supra, is whether the legal title to the fund passed from the plaintiff to Mrs. Hinman, and whether the plaintiff devested himself of such title. I am forced to believe that the plaintiff did not intend to devest himself of the title, and that Mrs. Hinman did not understand such to be his intention. There are no creditors whose rights are to be protected, and there is no suspicion in the record that there was any intention on the part of the plaintiff to cover up the account so as to defraud creditors, in which case a different rule would apply.

We are not embarrassed by our opinion in Hinman v. Devlin, 31 App. Div. 590, 52 N. Y. Supp. 124, upon which the respondent relies. This court had under consideration on that appeal certain transactions between the plaintiff herein and his children, in regard to conveyances of his real estate by the plaintiff to them, and it was assumed that the plaintiff had made these conveyances to his children as advancements. Incidentally, some of the matters involved in the present action came under consideration, but we made no ruling inconsistent with this opinion. Mrs. Hinman brought that action to set aside a conveyance by her father to her brother, under her power of attorney, of real estate which he had deeded to her. We held that this conveyance, executed under Mrs. Hinman's power of attorney to the plaintiff, was made, after a quarrel among the three members of the family, to the son, George, who had full knowledge of Mrs. Hinman's claims to the absolute ownership of the property, and that the execution of the deed, under the circumstances stated in that case, was an abuse of the trust con-

fided in the father, and for this reason set the conveyance aside. But the decision in that case is not conclusive of the facts in the present action.

I am clear in my conviction that the judgment should be reversed, and a new trial granted.

Judgment reversed, and new trial granted, costs to abide the final award of costs. All concur.